**CLAYEO C. ARNOLD**
**A Professional Corporation**
Clayeo C. Arnold, SBN 65070
Kirk J. Wolden, SBN 138902
**608 University Avenue**
**Sacramento, CA 95825**
Telephone: (916) 924-3100
Fax:  (916) 924-1829

Jerome F. Tapley, ASB-0583-A56T
**Cory Watson Crowder & DeGaris, P.C.**
**2131 Magnolia Avenue**
**Birmingham, AL 35205**
Telephone: (205) 328-2200
Fax: (205) 324-7896

**Attorneys for the Class**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## (OAKLAND DIVISION)

| | |
|---|---|
| **KIRK KEILHOLTZ and KOLLEEN KEILHOLTZ for themselves and on behalf of those similarly situated,**<br><br>        **Plaintiffs,**<br><br>vs.<br><br>**SUPERIOR FIREPLACE COMPANY; LENNOX HEARTH PRODUCTS, INC.; LENNOX INTERNATIONAL, INC. and DOES 1 through 25, Inclusive,**<br><br>        **Defendants.** | **No. CV 08-00836 SI**<br><br>**PLAINTIFFS'  POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(B)(6)**<br><br>Date: October 3, 2008<br>Time: 9:00 a.m.<br>Location: Courtroom 10 |

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . 1

**I.    INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.   PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS
       DEFENDANTS' CONDUCT WITH SPECIFICITY FOR
       UCL AND/OR CLRA PURPOSES** . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**III.  PLAINTIFFS' HAVE COMPLIED WITH THE PRE-
       LITIGATION PREREQUISITES UNDER CLRA** . . . . . . . . . . . . . . . . 7

**IV.   A CLRA ACTION DOES NOT REQUIRE DIRECT
       PRIVITY WITH THE MANUFACTURER** . . . . . . . . . . . . . . . . . . . . 10

**V.    THE STATUTE OF LIMITATIONS DOES NOT SUPPORT
       DISMISSAL BECAUSE PLAINTIFFS ALLEGE DELAYED
       DISCOVERY, ACTIVE CONCEALMENT AND AN
       ON-GOING COURSE OF CONDUCT** . . . . . . . . . . . . . . . . . . . . . . . 13

**VI.   IT IS PREMATURE TO JUDGE THE VALIDITY OF THE
       UNJUST ENRICHMENT CLAIM** . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**VII.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

## **TABLE OF AUTHORITIES**

### **Statutes**

Ca. Business & Professions Code section 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Ca. Civil Code section 1750 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ca. Civil Code section 1760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Ca. Civil Code section 1761 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ca. Civil Code section 1770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Ca. Civil Code section 1780 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Ca. Civil Code section 1782 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

### **Cases**

#### **Federal**

*Chamberlain v. Ford Motor Co.,* 369 F.Supp.2d 1138 (N.D.Cal. 2005) . . . . . . . . . . . 12

*Falk v. General Motors Corp.*, 496 F.Supp.2d 1088 (N.D. Cal. 2007) . . . . . . . . . . . . . 14

*In re Abbott Laboratories Norvir Anti-Trust Litigation,*
2007 WL 1689899 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Laster v. T-Mobile USA, Inc.,* F.Supp.2d 1181 (S.D.Cal. 2005) . . . . . . . . . . . . . . . 7-8

*Von Grabe v. Sprint PCS,* 312 F.Supp.2d 1285 (S.D.Cal. 2003) . . . . . . . . . . . . . . . . 7

#### **State**

*Aron v. U-Haul Co. Of California,* 143 Cal.App.4th 796 (2006) . . . . . . . . . . . . . . . . 4

*Berryman v. Merit Property Management, Inc.,* 152 Cal.App.4th 1544 (2007) . . . . . . 4

ii

*Committee on Children's TV v. General Foods Corp.,* 35 Cal.3d 219 (1983)  . . . . . . . . 4

*Hogya v. Superior Court,* 75 Cal.App.3d 1224th (1977)  . . . . . . . . . . . . . . . . . . . . . 12

*Kagan v. Gibraltar Savings and Loan Assn.*, 35 Cal.3d 582 (1984) . . . . . . . . . . . . . 8, 9

*Lavie v. Procter & Gamble Co.,* 105 Cal.App.4th 496 (2003)  . . . . . . . . . . . . . . . . . . 4

*Linear Technology Corp. v. Applied Materials, Inc.,* 152 Cal.App.4th 115 (2007)  . . . . 4

*Massachusetts Mutual v. Superior Court,* 97 Cal.App.4th 1282 (2002)  . . . . . . . 4, 5, 13

*McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457 (2006)  . . . . . . . . . . . . . . 4

*Outboard Marine Corp. v. Superior Court,* 52 Cal.App.3d 30 (1975)  . . . . . . . . . . . 7, 9

*Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal.4th 26 (1998)  . . . . . . . . . . . . . . . 4

*Saunders v. Superior Court*, 27 Cal.App.4th 832 (1994)  . . . . . . . . . . . . . . . . . . . . . 3

*Schauer v. Mandarin Gems of California, Inc.,* 125 Cal.App.4th 949 (2005)  . . . . 12, 13

*Schnall v. Hertz Corp.,* 78 Cal.App.4th 1144 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . 4

*Snapp Associates v. Robertson,* 96 Cal.App.4th 884 (2002)  . . . . . . . . . . . . . . . . . . 13

*State Farm v. Superior Court ,* 45 Cal.App.4th 1093 (1996)  . . . . . . . . . . . . . . . . . . . 4

*Wang v. Massey Chevrolet,* 97 Cal.App.4th 856 (2002)  . . . . . . . . . . . . . . . . . . . . . 11

## Regulations, Governmental, etc.

California's Unfair Business Practice Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Consumers Legal Remedies Act . . . . . . . . . . . . . . . . . 3, 4, 5, 7, 8, 9, 10, 11, 12, 13

1   **CLAYEO C. ARNOLD**
**A Professional Corporation**
2   **Clayeo C. Arnold, SBN 65070**
**Kirk J. Wolden, SBN 138902**
3   **608 University Avenue**
**Sacramento, CA 95825**
4   **Telephone: (916) 924-3100**
**Fax:  (916) 924-1829**
5

  **Jerome F. Tapley, ASB-0583-A56T**
6   **Cory Watson Crowder & DeGaris, P.C.**
**2131 Magnolia Avenue**
7   **Birmingham, AL 35205**
**Telephone: (205) 328-2200**
8   **Fax: (205) 324-7896**

9   **Attorneys for the Class**

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                 **(OAKLAND DIVISION)**

14

15   **KIRK KEILHOLTZ and KOLLEEN**   )   **No. CV 08-00836 SI**
**KEILHOLTZ for themselves and on**  )
16   **behalf of those similarly situated,**   )   **PLAINTIFFS' POINTS AND**
                            )   **AUTHORITIES IN OPPOSITION**
17       **Plaintiffs,**             )   **TO MOTION TO DISMISS**
                            )   **UNDER FEDERAL RULES OF**
18   **vs.**                      )   **CIVIL PROCEDURE 9(b) AND**
                            )   **12(B)(6)**
19   **SUPERIOR FIREPLACE COMPANY;**   )
**LENNOX HEARTH PRODUCTS, INC.;**  )
20   **LENNOX INTERNATIONAL, INC. and** )  Date: October 3, 2008
**DOES 1 through 25, Inclusive,**     )  Time: 9:00 a.m.
21                             )  Location: Courtroom 10
22         **Defendants.**        )
  _____ )

23                             **I.**

24                   **INTRODUCTION**

25        Defendants cavalierly characterize the Class Complaint's allegations as plaintiffs'

26   unwillingness to recognize that "fireplaces get hot." In comparing their fireplace to a kitchen

27   appliance such as an oven, defendants themselves disclose the defect which is intrinsic in their

28   fireplace. In fact, a kitchen oven does not get so hot as to inflict burns, let alone serious burns,

Plaintiffs' Opposition to Motion to Dismiss           1

1  because it is designed in a manner that the enormous heat generated by the oven's interior is not

2  transferred to the exposed exterior glass surface.  Because of its double paned design, one can

3  comfortably place their hands on the oven glass during operation without any burn or pain and,

4  a kitchen stove is designed such that the heating elements are parallel to the floor and physically

5  withdrawn from the hands of small children.  It is this expectation of safety relating to other home

6  appliances which lead the reasonable consumer to believe that they are adequately protected from

7  serious injury by defendants.

8        Rather than kitchen appliances, the  danger intrinsic in defendants' fireplace is more akin

9  to clothes irons which are designed to reach temperatures of 400 degrees[1].  Defendants' position,

10  logically extended, is that a consumer should reasonably expect a manufacturer to design and

11  market a product that presents a similar, or greater, risk of severe burns as numerous irons lined,

12  up, stacked up, and heated to the highest setting and intended to be placed or located in a family

13  room where small children play and people socialize.

14        In truth, the Complaint 's averments identify specific, dramatically dangerous defects in the

15  HAZARDOUS FIREPLACES, defendants' actual knowledge of those defects, defendants' actual

16  knowledge of relevant safety precautions implemented by their primary competitor, defendants'

17  unfair advantage in pricing and profit in the marketplace secondary to their conscious decision not

18  to add safety precautions to guard against the danger, and defendants' wrongful and unlawful

19  conduct in marketing and continuing to market  the HAZARDOUS FIREPLACES without disclosing

20  and/or warning of the ominous danger unique to their brand of fireplace.

21        Defendants seek dismissal of the present action, and/or one of two causes of action, on

22  essentially four grounds. First, defendants argue that plaintiffs must, and failed to,  meet the

23  specific pleading requirements set forth in Rule 9(b) for actions involving allegations of fraud

24  and/or misrepresentation.  Defendants' second argument is that the Court must dismiss plaintiffs'

25

26        [1]Importantly, defendants found, during performance testing of the HAZARDOUS FIREPLACES,

27  that the front glass surface heats to over 500 degrees, Fahrenheit, in the course of normal operation.  It
    should also be noted that even clothes irons, with top temperatures of only 400 degrees, have safety

28  design features, e.g. automatic shut-offs, to protect against inadvertent severe burns.

1    Second Cause of Action, seeking damages under California's Consumer Legal Remedies Act

2    ("CLRA") (Civil Code Section 1750 et seq) based on plaintiffs' supposed failure to provide pre-

3    complaint notice to defendants under Civil Code Section 1780.  Third, defendants claim the Court

4    must dismiss plaintiffs' CLRA cause of action because no "transaction" existed between plaintiffs

5    and defendants.   Fourth, defendants reliance upon the statute of limitations ignores the

6    application of the late discovery rule, their fraudulent concealment and the ongoing nature of their

7    wrongful conduct.

8         Defendants' position that the Complaint must, but fails, to meet the "specific" pleading

9    requirements set forth in Rule 9(b) for actions alleging "fraud," is without merit because the

10   Complaint sufficiently pleads, with specificity, failure to disclose material facts and other unlawful

11   conduct as applied to such claims under an UCL and/or CLRA action.  As to defendants' argument

12   plaintiffs did not give defendants pre-action notice under CLRA, plaintiffs and the Class have done

13   so (in the *Fields'* California Class now stayed), and any failure to specify notice compliance can be

14   easily remedied.   Case law establishes that notice of the defects is sufficient notice.   As to

15   defendants' argument with regard to the lack of a "transaction" between plaintiffs and defendants,

16   applicable case law under the CLRA does not support their position.

17        Defendants' position regarding the applicable statutes of limitations cannot support

18   dismissal of the complaint or any of its causes of action because plaintiffs allege, factual issues

19   exist, with respect to on-going conduct by the defendants, defendants' active concealment of the

20   unique danger presented by the HAZARDOUS FIREPLACES, and/or delayed discovery of the

21   unique danger presented by the HAZARDOUS FIREPLACES by the plaintiffs.

22                                          **II.**

23            **PLAINTIFFS' COMPLAINT SUFFICIENTLY PLEADS DEFENDANTS'**
             **CONDUCT WITH SPECIFICITY FOR UCL AND/OR CLRA PURPOSES**
24

25        Contrary to defendants' position, UCL causes of action, especially claims based on failure

26   to disclose, do not need to meet the heightened pleading requirements set forth in Rule 9(b)

27   because the term "fraudulent" as used in Section 17200 does not refer to the common law tort

28   of fraud.  *Saunders v. Superior Court,* 27 Cal.App.4th 832, 839 (1994).

Plaintiffs' Opposition to Motion to Dismiss             3

1   In fact, the fraud contemplated by Section 17200 bears little resemblance to common-law

2   fraud. *State Farm v Superior Court,* 45 Cal. App. 4th 1093, 1105 (1996)  "'Unlike common law

3   fraud, a [section 17200] violation can be shown even without allegations of actual deception,

4   reasonable reliance and damage.' [Citation.]" *Berryman v. Merit Property Management, Inc.* 152

5   Cal.App .4th 1544, 1556 (2007); see also *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26,

6   46-47 (1998) [fact-specific pleading requirements for common law fraud not applicable to section

7   17200 claims].  To state a cause of action under section 17200, it is only necessary to show that

8   members of the public are likely to be deceived. *Committee on Children's TV v. General Foods*

9   *Corp.,* 35 Cal.3d 197, 211 (1983); *Aron v. U-Haul Co. of California,* 143 Cal.App.4th 796, 806

10   (2006) ; *Schnall v. Hertz Corp.,* 78 Cal.App.4th 1144, 1167 (2000).  A "reasonable consumer

11   standard" applies when determining whether members of the public are likely to be deceived.

12   *Aron, supra,* 143 Cal.App.4th at p. 806.  Under this standard, unless a particular disadvantaged

13   or vulnerable group is targeted, the deceptive business practice is judged by the effect it would

14   have on a reasonable consumer. *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 506-507

15   (2003).

16   "When an unfair competition claim is based on an alleged fraudulent
    business practice ... 'a plaintiff need not plead the exact language of every
17   deceptive statement; it is sufficient for [the] plaintiff to describe a scheme to
    mislead customers, and allege that each misrepresentation to each customer
18   conforms to that scheme.' *Committee of Children's TV, supra,* 35 Cal.3d at pp. 212-
    213.) The allegation 'may be based on representations to the public which are
19   untrue, and " 'also those which may be accurate on some level, but will nonetheless
    tend to mislead or deceive.... A perfectly true statement couched in such a manner
20   that it is likely to mislead or deceive the consumer, such as by failure to disclose
    other relevant information, is actionable under' " [section 17200].' *McKell v.*
21   *Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1471 (2006). Whether a practice
    is deceptive, fraudulent, or unfair is generally a question of fact which requires
22   'consideration and weighing of evidence from both sides' and which usually cannot
    be made on demurrer. [Citations.]"

23

24   *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134-135 (2007).

25   It is important to recognize that claimants are limited to injunctive relief and/or restitution

26   in UCL claims. *Massachusetts Mutual v. Superior Court* (2002) 97 Cal. App.4th 1282, 1288.

27   With respect to the CLRA, plaintiffs allege defendants knowingly failed to disclose the fact

28   that their fireplaces presented a unique and substantial hazard, non-existent in all other similar

1    fireplaces on the market.  In CLRA class action cases alleging non-disclosure, the materiality of
2    the alleged undisclosed fact or facts provides the basis for determining the sufficiency of the
3    pleading. *Massachusetts Mutual v. Superior Court* at p. 1292-1294. For instance, in *Massachusetts*
4    *Mutual*, the plaintiff class alleged a CLRA cause of action based on Mass Mutual's alleged failure
5    to disclose their intent to reduce future dividends despite selling a life insurance product designed
6    to pay a dividend which the insured could then use to pay the premium for the life insurance
7    product.  The plaintiffs did not need to allege anything more than the undisclosed fact and that
8    the fact was known only by the defendant in order to properly plead a CLRA cause of action
9    because the undisclosed material fact was material enough to raise an inference of reliance,
10   rebuttable by the defense.  (Ibid) Similarly, in the present case, plaintiffs allege that defendants
11   knew, and were the only people who knew of, and knowingly failed to disclose the unique
12   substantial hazard presented by the HAZARDOUS FIREPLACES and that plaintiffs would not have
13   purchased their respective homes knowing the fireplace was much less safe and significantly more
14   dangerous than all other similar fireplaces on the market.

15       In general, the complaint alleges that defendants' HAZARDOUS FIREPLACES engaged in
16   deceptive business practices by knowingly making, marketing, and selling fireplaces  different and
17   far more dangerous than fireplaces designed, manufactured, and sold by others in the industry
18   while actively concealing the fact that their fireplaces were more dangerous and less safe.
19   Specifically, the Complaint alleges the HAZARDOUS FIREPLACES have single pane glass, are
20   installed in homes at a height accessible even to small children and infants, and can, under
21   reasonably expected consumer use does, reach temperatures well in excess of that necessary to
22   cause third degree burns even from momentary contact with the super heated glass whereas
23   other manufacturers of similar fireplace products have for several years been selling said similar
24   products with mandatory protective glass front guards.  (Complaint, p.2, paragraph 1; p.10,
25   paragraph 34)  Furthermore, that the HAZARDOUS FIREPLACES are a dangerous and patently
26   unsafe hazard to be used in a residence given the ability of the unguarded single pane glass
27   sealed front to heat up to temperatures in excess of 350 degrees Fahrenheit - well in excess of
28   a temperature necessary to cause third degree burns to skin contacting the glass even

Plaintiffs' Opposition to Motion to Dismiss          5

1 momentarily. (Complaint, p. 5, paragraph 15)

2 Moreover, Defendants designed these fireplaces, which are in reality principally
3 "ornamental" and serve no meaningful functional use at heights and in positions in family rooms
4 which make vulnerable children and infants the HAZARDOUS FIREPLACES' most likely victims.
5 They are aware of the extreme temperatures and continue to produce and sell HAZARDOUS
6 FIREPLACES, claiming that they have not figured out a way to deal with the problem. Defendants
7 have and continue to recklessly and intentionally ignore the danger they have created, failing to
8 rectify the enormous risk by installing warnings or guards, even after receipt of plaintiffs' CLRA
9 notice demanding such action. (Complaint, p. 10, paragraph 34)

10 Plaintiffs further allege "Recent studies, including a 2004 publication by the American Burn
11 Association, memorialize the seriousness of the problem created by the HAZARDOUS FIREPLACES,
12 recognizing: 'an alarming [15 fold] increase in the incidence of pediatric palmar burns associated
13 with gas fireplaces[,]' concluding that 'the increasing popularity of these units places more children
14 at risk.' Given their preeminence in the industry, and their significant market share as a
15 manufacturer and supplier of gas fireplaces, the statistics and information which are discussed
16 herein are directly and reasonably attributable to the defendants' conduct in designing,
17 manufacturing, distributing, advertising, marketing, and selling its HAZARDOUS FIREPLACES."
18 (Complaint, p. 11, paragraph 35)

19 It is the specifically identified significant hazard, unique to defendants' HAZARDOUS
20 FIREPLACES and their failure to disclose and/or warn of that unique hazard, coupled with the
21 unfair advantage defendants' gained in the marketplace secondary to reduced production costs
22 from intentionally failing to add safety design features utilized by all their competitors, that form
23 the basis for plaintiffs' allegations of defendants' violations of unfair business practices and
24 consumer protection laws. That is, defendants, with knowledge of but without disclosing or
25 warning of, or in anyway protecting against the enormous danger unique to their fireplaces,
26 marketed and sold, and continue to market and sell, the HAZARDOUS FIREPLACES with an unfair
27 advantage in the marketplace because defendants did not warn anyone of the unique hazard, and,
28 their hidden ability to charge less and/or profit more than their competitors as a consequence of

Plaintiffs' Opposition to Motion to Dismiss                6

1  secretly and intentionally failing to include safety features utilized in the industry .

2                                          **III.**

3                    **PLAINTIFFS' HAVE COMPLIED WITH THE**
                   **PRE-LITIGATION PREREQUISITES UNDER CLRA**
4

5          Plaintiffs and the Class have complied with the CLRA's pre-action notice requirement.  The

6   "pre-action notice", attached to the Declaration of Kirk Wolden, is the "pre-action-notice" upon

7   which plaintiffs and the Class rely.  (Declaration of Kirk J. Wolden, Ex. "A.") The "pre-action

8   notice", while not specifically identifying the plaintiffs in this particular action, nonetheless is

9   sufficient because it provides defendants with sufficient information to satisfy the reasons for the

10  requirement of "pre-action notice".

11         Under the California Legal Remedies Act (CLRA), notice of an alleged violation and a

12  demand for a remedy must be provided to the prospective defendant at least thirty days before

13  a lawsuit is filed. Civil Code § 1782(a).  The purpose of this notice requirement is to create a

14  window period during which the defendant can remedy the violation or attempt to reach a

15  settlement. As explained in *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 40-41

16  (1975):

17         The purpose of the notice requirement of section 1782 is to give the manufacturer
           or vendor sufficient notice of alleged defects to permit appropriate corrections or
18         replacements.   The notice requirement commences the running of certain time
           constraints upon the manufacturer or vendor within which to comply with the
19         corrective provisions.  The clear intent of the act is to provide and facilitate pre-
           complaint settlements of consumer actions wherever possible and to establish a
20         limited period during which such settlement may be accomplished.   This clear
           purpose may only be accomplished by a literal application of the notice provisions.
21
22         Thus, the courts have held that there must be strict compliance with those portions of the

23  notice requirements which are intended to ensure that the prospective defendant is provided with

    a thirty-day period to remedy the problem.  There must be strict compliance with the requirement
24
    that the prospective defendant be given notice thirty days before the complaint is filed. *Laster v.*
25
    *T-Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1195 (S.D.Cal. 2005). There must also be strict
26
    compliance with the requirements that the notice be given in writing and sent by certified or
27
    registered mail. *Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1304 (S.D.Cal. 2003).
28

Plaintiffs' Opposition to Motion to Dismiss                7

1    On the other hand, strict compliance with the notice requirements of section 1782 is *not*

2 required as to those aspects of the notice requirement which do not affect the defendant's right

3 to a thirty-day period in which to remedy the violation or attempt to settle.  In *Kagan v. Gibraltar*

4 *Savings and Loan Assn.*, 35 Cal.3d 582 (1984), the California Supreme Court held that strict

5 compliance is *not* required with regard to the provision of section 1782(a)(1) requiring that notice

6 be given of "the particular alleged violations" of the CLRA, or the provision of section 1782(a)(2)

7 requiring that the notice include the relief requested.  The court stated:

8    While a class demand letter under the Act should set forth, as explicitly as possible,
     the objected-to practices, the relief requested, and the intent to file a class action
9    should the letter's demands not be met, *failure to specifically request all of the relief*
     *to which a class may be entitled should not preclude a later action so long as the*
10   *essential notice function of section 1782, subdivision (a) is achieved*.

11   (*Id.* at 594.) (Emphasis added.)

12    In *Kagan*, the Supreme Court held that, while the plaintiff's section 1782 notice did not

13 contain specific information about the nature of the "objected-to practices" or a demand for class

14 relief, it was nevertheless sufficient.  This was because, when the section 1782 notice was

15 combined with an earlier letter sent by the plaintiff's husband, the defendant was given sufficient

16 information to understand the claims against it:

17    In the present case, the [section 1782] demand letter, together with the letter
     previously sent by plaintiff's husband, served this essential notice function by setting
18   forth objected-to practices which indicated the necessity for class relief and stating
     an intent to file a lawsuit should the letter's demands not be met.
19
     (*Id.* at 594-595.)
20
21    The court added that, had the defendant taken the steps set forth in section 1782(c) to

22 identify the members of the potential class and the nature of their claims, and attempted to settle

23 with the class, then the letters sent by the plaintiff and by her husband would have served the

     purposes of section 1782:
24
25    Had [defendant] Gibraltar met its affirmative obligation to satisfy the conditions set
     forth in section 1782, subdivision (c), the policy of the Act encouraging the informal
     and voluntary correction of consumer complaints would have been met.
26
     (*Id.* at 595.)
27
28    Thus, the court held that strict compliance with section 1782 is required only to the extent

1   that it is necessary to provide the defendant with thirty days notice to allow it to resolve or settle
2   the claims. The form of the notice need not strictly comply with the statute, so long as it provides
3   the defendant with sufficient information from which it can discern the general nature of the
4   alleged violations and of the relief sought.

5   In addition, the *Kagan* court indicated that this information need not come from the named
6   plaintiff. As noted above, the court held that information in a letter sent by the plaintiff's *husband*
7   could be considered as part of the section 1782 notice – even though it did not come from the
8   plaintiff herself, and was apparently not even sent using certified mail, or following any of the
9   other procedures set forth in section 1782(a). The court also held that should the trial court
10  ultimately conclude that the named plaintiff was not an appropriate class representative, another
11  plaintiff should be substituted for her – even though that new plaintiff would not have been
12  responsible for sending any part of the section 1782 notice. (*Id.* at 596.)

13  Thus, *Kagan* establishes that "strict compliance" with the notice requirements of section
14  1782 is only required to the extent it is necessary to satisfy "the essential notice function of
15  section 1782." Deviations from the letter of the statute are permissible, if they do not impair that
16  essential notice function. And, since *Kagan* is a California Supreme Court case, it the final word
17  on the interpretation of section 1782. To the extent anything in the earlier California appellate
18  court case, *Outboard Marine*, or any of the federal cases cited by defendants could be read as
19  contrary to *Kagan*, it is *Kagan* which this court must follow.

20  There can be no question, then, that the previous letter to defendant, notifying them of
21  the HAZARDOUS FIREPLACES' defects, hazards, and problems, as well as an impending class
22  action, satisfies the "pre-action notice" requirement. Defendants, had they met their obligations
23  under the CLRA in response to the "pre-action notice" set forth in Exhibit A, would have identified
24  the plaintiffs in this action as members of the class. A defendant need not receive a pre-action
25  notice from each individual member of the class to file an action or be a member of the class.
26  Such a requirement would be onerous and inconsistent with the purpose of a pre-action notice.
27  The pre-action notice requirement is not a jurisdictional matter. Rather, it is required only to
28  provide a defendant with an opportunity to take action to avoid a lawsuit. Here, defendant

1  received such a notice and chose not to avoid litigation.  They cannot now claim specific members
2  of the class needed to give them more notice.

3      Plaintiffs reference but inadvertently failed to attach the pre-action notice upon which they
4  rely to the First Amended Complaint.  To the extent the court believes it necessary that plaintiffs
5  attach this notice or specify the notice requirements in the body of the pleading, plaintiffs can
6  certainly do so.

7      Assuming arguendo plaintiffs' notice were inadequate, the question becomes whether or
8  not dismissal of the action should be with or without prejudice.  Obviously, any failing by *Keilholtz*
9  would not work to the disadvantage of the remaining Class members.  As to the Keilholtz'
10  themselves, their good faith effort to comply with law by relying upon another consumer's notice
11  militates strongly against the imposition of the draconian sanction of prejudicial dismissal.

12                                   **IV.**

13                    **A CLRA ACTION DOES NOT REQUIRE**
                  **DIRECT PRIVITY WITH THE MANUFACTURER**
14

15      Defendants argued and lost this point twice in the *Fields'* California Class.  Attached to Kirk
16  Wolden's Declaration as Exhibits "B" and "C" are copies of the Orders of the Sacramento Superior
17  Court denying defendants' requested relief based on the same argument.

18      Defendants argue that Plaintiffs cannot state a cause of action under the CLRA because
19  they never purchased or leased the goods at issue, glass-front fireplaces, *"directly* from"
20  Defendants. In fact, the CLRA contains no such requirement.  If it did, the CLRA would not protect
21  consumers from any entity/person in the chain of commerce beyond the immediate seller
22  regardless of the egregiousness of the actions of a particular entity/person in the chain of
23  commerce and/or innocence of the immediate seller.  Such an interpretation would eviscerate the
24  purpose of the CLRA.

25      The CLRA was enacted in 1970 as a "nonexclusive statutory remedy for unfair methods of
26  competition and unfair or deceptive acts or practices undertaken by any person in a transaction
27  intended to result or which results in the sale or lease of goods or services to any consumer."  The
28  purposes of the CLRA are "to protect consumers against unfair and deceptive business practices

Plaintiffs' Opposition to Motion to Dismiss              10

1  and to provide efficient and economical procedures to secure such protection." *Wang v. Massey*
2  *Chevrolet,* 97 Cal.App.4th 856, 869 (2002).  The CLRA is to be "liberally construed and applied
3  to promote its underlying purposes."  Civil Code § 1760.

4       The CLRA makes unlawful a variety of deceptive and unfair acts and practices, if they are
5  "undertaken by *any person* in a transaction *intended to result or which results in the sale or lease*
6  *of goods to any consumer*." (Civil Code § 1770(a).) (Emphasis added.)  Civil Code § 1780(a)
7  provides that "[a]ny consumer who suffers any damage as a result of the use or employment *by*
8  *any person* of a method, act, or practice declared to be unlawful by Section 1770 may bring an
9  action against that person . . . ." (Emphasis added.)

10       Defendants claim that the term "transaction," as used in the CLRA, requires an agreement
11  directly between the consumer-plaintiff and the defendant against whom the CLRA action is
12  brought.[2]   This interpretation is contrary to the plain language of the statute. The word
13  "transaction", within the context of Civil Code 1770(a), is not the operative language that gives
14  rise to a CLRA cause of action.  The language immediately following the word "transaction", i.e.
15  "....intended to result or which results in the sale or lease of goods or services to any consumer"
16  describes the circumstances subject to a CLRA cause of action.  In this way, the CLRA protects
17  consumers, as well as innocent sellers/buyers,  from unlawful conduct by any person in the chain
18  of commerce.

19       Even if the word transaction, as used in Civil Code Section 1770, is ascribed jurisdictional
20  significance, the definition of the term "transaction" in the CLRA, found in section 1761(e), does
21  not support defendants' argument.  Contrary to Defendants' claims, the Legislature did not define
22  a "transaction" as an agreement between a consumer and the defendant or the seller or lessor.
23  Rather, the Legislature defined a "transaction" as "an agreement between a consumer and *any*
24  *other person*."  Similarly, section 1780 allows a CLRA action to be brought, not only against a
25  seller or lessor, or a person in privity of contract, but rather against "any person" who uses

26

27       [2]A "transaction" is defined as "an agreement between a consumer and *any other person* whether
     or not the agreement is a contract enforceable by action, and includes the making of, and the
28     performance pursuant to, that agreement."  Civil Code § 1761(e).  (Emphasis added.)

Plaintiffs' Opposition to Motion to Dismiss          11

1  methods, acts, or practices declared unlawful by section 1770.

2  Defendants assert that the definitions under the CLRA are "limited" and make clear that
3  "a plaintiff cannot maintain a CLRA claim unless he or she has actually purchased or leased the
4  goods or services at issue from the defendant." In fact, the definitions under the CLRA, are
5  anything but limited. Indeed, they are extremely broad, permitting a consumer to bring an action
6  against "any person" who uses methods prohibited by the CLRA. Moreover, section 1760 requires
7  those definitions to be "liberally construed and applied" to protect consumers.

8  Following the plain language of the statute, the courts have made clear that a direct
9  transaction between the consumer and the defendant is not required by the CLRA. For example,
10  in *Hogya v. Superior Court,* 75 Cal.App.3d 122, 125-126 (1977), the plaintiff was a consumer who
11  purchased beef from a Navy commissary. The beef had been falsely marked as "choice," rather
12  than merely "good." The Navy had purchased the beef from National Meat Packers. The court
13  held that the consumer was "clearly authorized" to bring an action against National Meat Packers.

14  Similarly, in *Chamberlain v. Ford Motor Co.,* 369 F.Supp.2d 1138, 1144 (N.D.Cal. 2005),
15  the court held that consumers who bought used cars from third parties could bring an action
16  under the CLRA against the manufacturer of the cars for knowingly selling defective engine parts.
17  The court held, "Plaintiffs who purchased used cars have standing to bring CLRA claims, *despite*
18  *the fact that they never entered into a transaction directly with Defendant.*" (Emphasis added.)

19  In light of the plain language of the statute, *Chamberlain* and *Hogya*, it is difficult to see
20  how defendants can seriously argue that the CLRA requires a "direct" transaction between the
21  consumer and the defendant. Defendants' effort to read the Consumers Legal Remedies Act as
22  merely codifying a common law breach of warranty claim is plainly incongruent with the broad
23  consumer protection provided for in the Act.

24  The only authority defendants have cited in support of this assertion is a single case which
25  is not on point, *Schauer v. Mandarin Gems of California, Inc.,* 125 Cal.App.4th 949, 960 (2005).
26  The issue in *Schauer,* was the definition of the term "consumer" in the CLRA, *not* whether a
27  consumer must have a transaction directly with the defendant.

28  In *Schauer* the plaintiff was a woman who had been given an engagement ring which her

Plaintiffs' Opposition to Motion to Dismiss          12

1  then-fiancé had purchased from the defendant jewelry store.  The plaintiff contended that the

2  quality of the ring was inferior to what the store had advertised.  The court noted that the CLRA

3  defines a "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods

4  or services for personal, family, or household purposes."  The court held that because the plaintiff

5  did not purchase the ring, she was not a "consumer" and thus lacked standing to maintain an

6  action under the CLRA.  The court stated, "[u]nfortunately for plaintiff, by statutory definition [her

7  fiancé] Erstad was the consumer because it was he who purchased the ring."  Having determined

8  that the plaintiff was not a "consumer" under the statute, the *Schauer* court had no reason to

9  consider whether the CLRA requires consumers to have a "direct" transaction with the defendant,

10  and did not do so.  The definition of "consumer" is not at issue in the present case.  Defendants

11  have not attempted to argue that Plaintiffs do not meet the statutory definition of consumers.

12  Thus, *Schauer* is irrelevant to the issues raised in defendants' motion.

13                                               **V.**

14            **THE STATUTE OF LIMITATIONS DOES NOT SUPPORT DISMISSAL**
          **BECAUSE PLAINTIFFS ALLEGE DELAYED DISCOVERY, ACTIVE**
15            **CONCEALMENT AND AN ON-GOING COURSE OF CONDUCT**

16            Defendants' reliance on *Snapp Associates v. Robertson*, 96 Cal.App.4th 884, 891 (2002),

17  ignores the distinct factual differences between its facts and a case involving active non-disclosure

18  and concealment of a substantial consumer hazard.  Moreover, the same justice of the same court

19  which authored the *Snapp* decision held in a case of fraudulent non-disclosure under the UCL that

20  the late discovery rule should apply.  *Massachusetts Mutual v. Superior Court*, 97 Cal.App.4th

21  1282, 1295 (2002).   Even if *Snapp* did apply, because plaintiffs allege defendants actively

22  concealed and continue to actively conceal, via denials and lack of disclosure, the unique nature

23  of the hazard presented by their HAZARDOUS FIREPLACES, the Court does not need to decide the

24  issue of whether delayed discovery applies to a UCL claim.

25            Defendants' argument that the hazard is obvious and that should somehow let them escape

26  responsibility dose not recognize the allegations that other manufacturers design and sell safer

27  fireplaces, and, that the HAZARDOUS FIREPLACES are unsafe for use, even with knowledge that

28  the glass might be hot.  In other words, the danger of third degree burns from momentary contact

with the single pane glass, is not so obvious when you consider all other manufacturers have a design aspect intended to eliminate that risk, and, the HAZARDOUS FIREPLACES still severely or can severely injure people, including children, regardless of knowledge of the temperature of the glass, because of its intended location of use.

## VI.

### IT IS PREMATURE TO JUDGE THE VALIDITY OF THE UNJUST ENRICHMENT CLAIM

In the recent case of *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088 (N.D.Cal. 2007), Judge Alsop of this Court recognized the uncertainty of the law in the State of California regarding the existence for a cause of action for unjust enrichment. Finding that plaintiffs' valid UCL claim on behalf of California consumers offered redundant rights and remedies to class members, Judge Alsop essentially ruled that there was no need for and thus no reason to finally determine whether such a claim exists under California law. Here, plaintiffs' UCL claim is still under attack regarding issues such as the statute of limitations, and yet undetermined as to the extent to which the Class members are adequately protected by the UCL claim.

Adding to this uncertainty is the factual distinction between the *Falk* Class and this Class of U.S. consumers. As was held recently in the case of *In re Abbott Laboratories Norvir Anti-Trust Litigation*, 2007 WL 1689899 (N.D. Cal.), an appropriate case, a California federal court will allow class members from other states to pursue unjust enrichment claims. Issues relating to certification of a multi-state class, and what rights and remedies should be available to those non-California participants is far from resolved. The issue having been identified and noted, it is simply inappropriate at this juncture to make determinative findings regarding the availability of an unjust enrichment claim to the California or non-California Class members.

## VII.

## CONCLUSION

This is a case for which consumer protection and unfair business practice laws exist. The defendants were able to under sell their competitors by not implementing safe-guards to reduce the hazard of severe burns from even momentary contact with the single-pane front glass of the

1  HAZARDOUS FIREPLACES at the expense of their competitors not to mention the health, safety,
2  and welfare of the consumers.  Defendants should not be able to escape responsibility because
3  they have actively concealed their unique problems from consumers or because of some rectifiable
4  procedural issue.

6  Dated: September 18, 2008                      CLAYEO C. ARNOLD
                                                  A Professional Law Corporation

8                                                 By: _____
                                                      KIRK J. WOLDEN
9                                                     Attorneys for the **CLASS**