Clayeo C. Arnold (SBN 65070)
Kirk J. Wolden (SBN 138902)
kirk@justice4you.com
Clifford C. Carter (SBN 149621)
CLAYEO C. ARNOLD
A Professional Corporation
865 Howe Avenue, Suite 300
Sacramento, CA  95825
Telephone:  (916) 924-3100
Facsimile:  (916) 924-1829

Ernest Cory (ASB-2279-Y83E)
F. Jerome Tapley (ASB-0583-A56T)
Hirlye R. "Ryan" Lutz, III (ASB-6641-E59L)
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

Michael F. Ram (SBN 104805)
mram@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

Attorneys for Plaintiffs and the Class

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(OAKLAND DIVISION)

| | |
|---|---|
| KIRK KEILHOLTZ and KOLLEEN KEILHOTZ for themselves and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENNOX INDUSTRIES, INC.; LENNOX HEARTH PRODUCTS, INC.; LENNOX INTERNATIONAL, INC., and DOES 1 through 25, inclusive,<br><br>Defendants. | NO.  4:08-CV-00836CW<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:  December 3, 2009<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFFS HAVE STANDING BECAUSE THEY WOULD NOT HAVE PAID FOR THEIR HAZARDOUS FIREPLACE HAD THEY KNOWN OF ITS DANGERS. ....................................................................................................................... 2

III. THE CLASS OF OWNERS OF LENNOX AND SUPERIOR FIREPLACES IS ASCERTAINABLE. ........................................................................................................ 3

IV. CALIFORNIA LAW APPLIES AND COMMON ISSUES PREDOMINATE. ................ 4

   A. Because Lennox's Relevant Conduct Occurred In California, The Consumer Protection Law of California Can Be Applied to the National Class. .................................................................................................................. 4

   B. Under California Law, Common Issues Predominate ........................................... 7

      1. Common Claims Predominate Under the UCL .......................................... 7

         a. Common Claims Predominate Under the Unfairness Prong of the UCL ................................................................................... 7

         b. Common Claims Predominate Under the Fraudulent Prong of the UCL. ................................................................................. 8

      2. Common Issues Predominate With the CLRA Claims .............................. 9

         a. In An Omissions Case Under the California Consumer Protection Statutes, Materiality Is Determined By The Objective "Reasonable Consumer Standard," And Is Thus A Common Issue ....................................................................... 10

         b. Causation In a Consumer Protection Omission Case Can Be Determined on a Class-Wide Basis by Proof of Materiality. ......... 10

      3. Unjust Enrichment .................................................................................... 11

   C. Differences in Damages Among Class Members Do Not Defeat Class Certification ......................................................................................................... 12

V. TYPICALITY AND ADEQUACY ARE PRESENT ....................................................... 12

   A. The Class Representatives Will Adequately Represent the Class. ....................... 12

   B. Proposed Class Counsel Are Adequate ................................................................ 13

VI. A CLASS ACTION IS THE SUPERIOR METHOD FOR FAIR AND EFFICIENT ADJUDICATION OF THIS CONTROVERSY. ........................................ 15

VII. THE CLASS TIME PERIOD IS PROPER WITH RESPECT TO CALIFORNIA. .......... 15

VIII. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Aron v. U-Haul Co. of California*
  143 Cal. App. 4th 796 (2006)..................................................................................................10

*Barquis v. Merchants Collection Assn.*
  7 Cal.3d 94 (1972)....................................................................................................................7

*Camacho v. Automobile Club of Southern California*
  142 Cal. App. 4th 1394 (2006).................................................................................................7

*Caro v. Procter & Gamble Co.*
  18 Cal. App. 4th 644 (1993)...................................................................................................11

*Clark v. City of Lakewood*
  259 F.3d. 996 (9th Cir.2001).....................................................................................................2

*Clothesrigger, Inc. v. GTE Corp.*
  191 Cal. App. 3d 605 (1987).....................................................................................................4

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal.App.4th 663 (2006)....................................................................................................10

*Committee on Children's Television, Inc. v. General Foods Corp.*
  35 Cal. 3d 197 (Cal. 1983).......................................................................................................8

*Consumer Advocates v. Echostar Satellite Corp.*
  113 Cal. App. 4th 1351 (2003)...............................................................................................10

*Day v. AT&T*
  63 Cal. App. 4th 325 (1998).....................................................................................................9

*Falk v. GMC*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007)....................................................................................9

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998)................................................................................................12

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992)..................................................................................................13

*Huarto v. Super. Ct.*
  11 Cal. 3d 574 (1974)...............................................................................................................6

*In Re Abbott Laboratories Norvir Antitrust Lit.*
  2007 WL 16899 (N.D. Cal. 2007)......................................................................................7, 11

*In re Mattel, Inc.*
  588 F.Supp.2d 1111 (C.D.Cal. 2008).......................................................................................2

*In re Pizza Time Theatre Sec. Litig.*
  112 F.R.D. 15 (N.D. Cal. 1986)................................................................................................5

*Kaczmarek v. IBM*
     186 F.R.D. 307 (S.D.N.Y. 1999) ...................................................................................... 6

*Kearney v. Solomon Smith Barney, Inc.*
     39 Cal. 4th 95 (2006) ........................................................................................................ 6

*Klay v. Humana, Inc*
     382 F. 3d 1241 (11th Cir. 2004) .................................................................................... 12

*Krusi v. S.J. Amorozo Construction Company, Inc.*
     81 Cal.App.4th 995 (2000) ............................................................................................... 4

*Lavie v. Proctor & Gamble Co.*
     105 Cal. App. 4th 496 (2003) .......................................................................................... 8

*Lectrodryer v. SeoulBank*
     77 Cal. App. 4th 723 (2000) .......................................................................................... 11

*Lerwill v. Inflight Motion Pictures, Inc.*
     582 F.2d 507 (9th Cir.1978) ............................................................................................ 3

*Lozano v. AT & T Wireless Services, Inc.*
     504 F. 3d 718 (9th Cir. 2007) .......................................................................................... 7

*Mazza v. Am. Honda Motor Co.*
     254 F.R.D. 610 (C.D. Cal. 2008) ............................................................................. passim

*Mevorah v. Wells Fargo Home Mortg., Inc.*
     2005 WL 4813532 (N.D.Cal. 2005) .............................................................................. 14

*Moreno v. Autozone, Inc.*
     251 F.R.D. 417 (N.D.Cal.2008) ............................................................................... 13, 14

*Norwest Mortgage, Inc. v. Superior Court*
     72 Cal. App. 4th 214 (1999) ............................................................................................ 6

*Parkinson v. Hyundai Motor Am.*
     2008 U.S. Dist. LEXIS 101098 (C.D. Cal. 2008) ................................................... 4, 5, 6

*Picus v. Wal-Mart Stores, Inc.*
     256 F.R.D. 651 (D. Nev. 2009) ....................................................................................... 6

*Poulos v. Caesars World, Inc.*
     379 F.3d 654 (9th Cir. 2004) ......................................................................................... 11

Schwartz v. Harp
     108 F.R.D. 279 (C.D.Cal.1985) .................................................................................... 13

*Tchoboian v. Parking Concepts, Inc*
     2009 WL 2169883 (C.D.Cal. 2009) ................................................................................ 4

*Trew v. Volvo Cars of North America*
     2006 U.S. DIST LEXIS 4890 (E.D.Cal. 2006) ............................................................... 2

*Util. Consumers' Action Network v. Sprint Solutions, Inc.*
     2009 U.S. Dist. LEXIS 53055 (S.D. Cal. 2009) .............................................................. 6

*Valentino v. Carter-Wallace, Inc.*
   97 F.3d 1227 (9th Cir. 1996)..................................................................................................15

*Wershba v. Apple Computer, Inc.*
   91 Cal. App. 4th 224 (2001).................................................................................................4, 5

*Wilens v. TD Waterhouse Group, Inc.*
   120 Cal. App. 4th 746 (2003).................................................................................................12

*Williams v. Gerber Prods. Co.*
   523 F.3d 934 (9th Cir. 2008)....................................................................................................8

*Zinser v. Accufix Research Inst., Inc.*
   253 F.3d 1180 (9th Cir. 2001)..................................................................................................6

**Statutes**

Bus. & Prof. Code § 17200 .......................................................................................................5, 7

Cal. Civ. Code section 1782(c) .....................................................................................................4

**Treatises**

*Newberg on Class Actions* (4th ed. 2002) §3:30 ......................................................................13

I.      INTRODUCTION

The design of Lennox and Superior brand fireplaces makes them far more dangerous than others. This danger is fundamentally different than that associated with traditional fireplace designs which are open or can be opened to the room. Buc Reply Dec., 2:9-16. Lennox fireplaces bring together three separate defects in design which combine to make the fixed glass a violently hot collection plate for the enormous heat trapped in the sealed firebox. With the sealed glass in place, Lennox fireplaces are designed to generate heat of 500 degrees - - more that 300 degrees more than necessary to cause third degree burns in one second of contact. Buc Reply Dec., 2:16-18. With the glass on a Lennox fireplace removed and the firebox opened to the room, the temperature at the fixed point of the glass during operation is approximately 148 degrees Fahrenheit, cool enough that one can hold her hand in the place where the glass used to be for 40 seconds or more without repercussion. Buc Reply Dec., 3:1-2.

That some "warnings" have been given does not solve this problem. First, purchasers do not receive the information until they have already incurred the cost of including one of Defendants' defective fireplaces in the price of their home. Second, as consumer safety expert opines, given the unforgiving nature of the hazard and its peculiar risk to infants and toddlers, warnings which depend upon parental supervision and communication to everyone who enters a class member's home are simply not an adequate way for Lennox to address the hazard. Pollack-Nelson Dec., pp. 21:22-24:27.

Lennox's assertion that the hazard is "self-evident" is belied by its actions in distributing well in excess of 100 "warnings" regarding the hazard. Each is inadequate because Lennox doesn't tell the truth: that its fireplaces' glass: 1) gets up to 500 degrees Fahrenheit; 2) will cause third degree burns in less than one second of contact; and 3) cannot be safely used without an adequate physical barrier.

Lennox's post-sale, too-little, too-late "warnings" have materially contributed to a fifteen-fold increase in glass front fireplace palmar burns, which are now the most common type of burn to children. Dimick Dec., pp. 10-12.

The only way to provide redress for this wrong is through a class action process.

## II. PLAINTIFFS HAVE STANDING BECAUSE THEY WOULD NOT HAVE PAID FOR THEIR HAZARDOUS FIREPLACE HAD THEY KNOWN OF ITS DANGERS.

"Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical." *Clark v. City of Lakewood*, 259 F.3d. 996, 1007 (9th Cir.2001).  Here, Plaintiffs assert that they were deceived by omission into paying for, as part of their home purchase, a Hazardous Fireplace.  Plaintiffs allege that had they known of the extreme hazard it posed, they "would not have paid for or even allowed the Superior fireplace to have been installed in [their home[.]"  Kolleen Keilholtz Decl., ¶ 6; Kirk Keilholtz ¶ 2.  Thus, Plaintiffs have suffered "injury in fact" and have "lost money or property[.]" *See Trew v. Volvo Cars of North America*, 2006 U.S. DIST LEXIS 4890, **17-18 (E.D.Cal. 2006) (standing under UCL where plaintiff alleges "she would not have paid as much initially" to lease her Volvo vehicle had defect been disclosed); *In re Mattel, Inc.*, 588 F.Supp.2d 1111, 1117 (C.D.Cal. 2008) ("Plaintiffs' claim is straightforward -- they allege that they purchased toys that were unsafe and unusable and should get their money back.")

Plaintiffs have testified that they would not have paid for the fireplace to be included in their home had they been advised of its extreme hazard.  Kolleen Keilholtz Decl., ¶ 6. In deposition, Kolleen disagreed that prospective purchasers of her home would "appreciate" the presence "of our particular fireplace[.]"  She feels obligated to disclose what she knows about the hazards which she believes to be a "liability."  Wolden Reply Decl., Ex "1," 36:25-37:16.  The gist of Kirk Keilholtz's testimony on resale value was far from what Lennox represents.  See Wolden Reply Decl. ¶ 3.  Kirk understood an unclear and compound legal question regarding loss or property damage to mean physical rather than economic loss.  Kirk has modified his deposition testimony in a timely fashion to so clarify.  Wolden Reply Decl., Ex. 3.

Thus, Plaintiffs have more than satisfied the UCL causation standard recently reaffirmed by the California Supreme Court: "while a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the

injury-producing conduct." *In re Tobacco II Cases*, 48 Cal.4th 298, 328 (2009).[1]

That another reason may have developed for its non-use does not negate that Plaintiffs would not have paid for the Hazardous Fireplace had they known of the hazard it posed. Moreover, plaintiffs testified clearly in their depositions that they did not stop using the hazardous fireplace completely until they learned of the extreme hazard it posed. Both Kolleen and Kirk described an ongoing, albeit limited, use for the fireplace until they were given notice of the hazard. Wolden Reply Decl., Ex. "1", 31:18-22; see also *Id.*, Ex. "2," 51:24-52:8. Kolleen made very clear that their "primary concern with respect to the heat that comes from the fireplace [is] associated with children . . . and adults" and the injuries which might be suffered. *Id.*, Ex. "1", 33:15-20. Kirk's testimony was consistent with Kolleen's. *Id.*, Ex. "2," 78:16-18.

**III.  THE CLASS OF OWNERS OF LENNOX AND SUPERIOR FIREPLACES IS ASCERTAINABLE.**

An adequate class definition specifies "a distinct group of plaintiffs whose members [can] be identified with particularity." *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978). Here, Plaintiffs' definition has allowed Defendants to specify that "the [c]lass definition encompasses approximately 556,369 fireplaces." Opp., 5:10. This ability to specify numbers with such precision shows that the class definition specifies a "distinct group of plaintiffs whose members [can] be identified with particularity." *Lerwill*, 582. F.2d at 512. Since the Superior or Lennox brand is on the exposed face of the appliance, class members will know that they belong. The class is thus "objectively ascertainable, certainly by themselves on notice of the pendency of a certified class." *Tchoboian v. Parking Concepts, Inc.,* 2009 WL 2169883

---

[1] Lennox's argument that other factors were involved in Plaintiffs' home purchase misses the mark. See *Chamberlan v. Ford*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005) ("Defendant argues that Plaintiffs' showing is insufficient without direct evidence that reasonable customers choose which cars to buy based on the reliability of particular components. This type of evidence is not necessary in order for a reasonable jury to conclude that a failure to disclose such heightened risks is material. Because most manifolds do last the life of the engine, it is not surprising that manifold reliability is usually not a factor in the decision of which car to purchase. The fact that most consumers do not consider manifold reliability does not lead to the conclusion that the average consumer would not consider an increased rate of post-warranty failure to be material either to choice of car or price.")

(C.D. Cal. 2009).[2]

On May 1, 2009, Lennox purported to comply with plaintiffs' CLRA pre-litigation notice by offering specific remedies to class members, *as defined by plaintiffs*, in alleged compliance with Cal. Civ. Code section 1782(c). Lennox's actions in purporting to comply and seek the benefits of section 1782(c) are inconsistent with its apparent present position that Hazardous Fireplace consumers can not be "reasonably" identified.

Lennox complains that the definition includes subsequent purchasers, citing *Krusi v. S.J. Amorozo Construction Company, Inc.*, 81 Cal.App.4th 995, 1006 (2000). *Krusi* was a negligence case with a homeowner who had actual knowledge of construction defects. The court concluded the homeowner could not transfer that vested cause of action to a subsequent purchaser in the absence of an express assignment. Here, the class alleges an ongoing violation of the liberally applied UCL and CLRA consumer statutes, and *Krusi* is inapposite. *See Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d at 1144 ("Defendant has also shown no grounds for the Court to reconsider the conclusions in its previous order, namely that pure omissions are actionable under the CLRA and that Plaintiffs who purchased used cars have standing to bring CLRA claims.")

## IV. CALIFORNIA LAW APPLIES AND COMMON ISSUES PREDOMINATE.

### A. Because Lennox's Relevant Conduct Occurred In California, The Consumer Protection Law of California Can Be Applied to the National Class.

Defendants cite no California authority that California consumer protections law cannot apply to a national consumer product case against a defendant with its principal place of business in California and cite four cases that say it can: *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001); *Parkinson v. Hyundai Motor Am.*, 2008 U.S. Dist. LEXIS 101098 (C.D. Cal. 2008); and *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. 2008).

In *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987), the defendant's principal offices were located in California, a significant number of class members were located

---

[2] Clear instructions on how to identify oneself as a class member will suffice. *Ghazaryan v. Diva Limousine, Ltd.,* 1669 Cal.App.4th 1524, 1533 (2008).

in California, and the defendant's agents who prepared the promotional and advertising literature did so in California. *Clothesrigger*, 191 Cal. App. 3d at 613. All of these factors are present here. Lennox claims that California law does not apply because some of the fireplaces were manufactured out of state.[3] This case involves the *marketing* of the fireplaces, however, and the development, design, marketing and advertising decisions were indisputably made in California. Lennox admits that Defendants' fireplaces division, Lennox Hearth, is and has been headquartered in California. Opp. at 19, fn 8. That Lennox is moving to Tennessee can hardly be determinative of the choice of law applied to its past illegal conduct.

*Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224 (2001) likewise involved a defendant with its principal place of business in California. Substantial numbers of class members were located in California and the core decision at issue was made at Apple's headquarters in California. Certifying a national class, the court observed:

> California's consumer protection laws are among the strongest in the country. Like Michigan, California's unfair competition law imposes liability without the necessity of showing intent. . . California unfair competition law (Bus. & Prof. Code, §§ 17200 et seq. & 17500 et seq.) provides for disgorgement of a defendant's wrongful gains. . . . Punitive damages are also available in this state under the California Consumers Legal Remedies Act, Civil Code section 1780, subdivision (a)(4).

*Id*. at 242-43.

In *Parkinson v. Hyundai Motor Am.*, 2008 U.S. Dist. LEXIS 101098 (C.D. Cal. 2008), the court held:

> Plaintiffs contend that defendant's relevant operations, including its headquarters, marketing department, warranty department, customer affairs department, and engineering department, are located in California. Plaintiffs aver that many of the alleged wrongful acts emanated from defendant's Fountain Valley offices in Orange County, California. See *In re Pizza Time Theatre Sec. Litig*., 112 F.R.D. 15, 18 (N.D. Cal. 1986). Additionally, plaintiffs allege that defendant conducts substantial business in the state through its fifty California dealerships. Finally, given the volume of California automobile sales and the number of in-state dealerships, plaintiffs claim it is likely that more class members reside in California than any other state. Thus, plaintiffs' alleged contacts are sufficient to satisfy the test under *Shutts*.

---

[3] Discovery responses given by Lennox appear to confirm that the vast majority of units in the class *were* in fact manufactured in California and are at odds with Defendants' somewhat mysterious evidence suggesting the contrary. Wolden Reply Decl. ¶ 4; Mahler Reply Decl.

*Parkinso*n, 2008 U.S. Dist. LEXIS 101098 at \*\*45-46.

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. 2008)[4] involved the very same claims alleged here: California's Unfair Competition Law, Consumers Legal Remedies Act, and the common law of unjust enrichment. Certifying a national class, the court stated:

> Defendant's allegedly deceptive practices originate in, and emanate from, California. Defendant is a California corporation, with its principal place of business and corporate headquarters in Torrance, California, including its headquarters for sales, marketing, research and development.

The court observed that no other state had a demonstrated interest in denying protection to its consumers against a California corporation. *Id*. at 623. The *Mazza* court specifically distinguished *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig*., 174 F.R.D. 332, 348 (D.N.J. 1997) on which Lennox relies. *Id.* at 622-23.

Other states have limited consumer remedies to protect businesses in those states, not businesses in California. As Lennox's relevant conduct was centered in California, no other state could have a legitimate interest in preventing its own citizens full recovery under California's favorable consumer protection statutes. See *Huarto v. Super. Ct.*, 11 Cal. 3d 574, 581 (1974); *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) (government interest test requires that trial courts apply the law of the state whose "interest would be mo[st] impaired if its policy were subordinated to the policy of the other state[s]"). The other cases that Lennox cites are not on point.[5]

More to the point is *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009), certifying a nation-wide consumer class and applying New Jersey law to the entire class

---

[4] American Honda has appealed the *Mazza* decision to the Ninth Circuit.

[5] *In re Northern Dist. of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, (9th Cir. Cal. 1982) (personal injury case and no California defendant); *Kaczmarek v. IBM*, 186 F.R.D. 307(S.D.N.Y. 1999) (breach of warranty and negligent misrepresentation); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 217 (1999) (incorporated in California but principal place of business in Iowa); *Util. Consumers' Action Network v. Sprint Solutions, Inc*., 2009 U.S. Dist. LEXIS 53055 \* 8 (S.D. Cal. 2009) (defendant apparently not headquartered in California); *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180 (9th Cir. 2001) (Colorado defendant); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009) (plaintiffs sought to apply Nevada law).

because "New Jersey's interest in regulating Mercedes, a corporation located within its borders, requires the application of New Jersey law to Plaintiffs' consumer fraud claims under the 'government interest' choice of law test [also] utilized by California and New York." *Id.* at 59.

Finally, in *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 627 (C.D. Cal. 2008) the national certification included unjust enrichment claims. *See also In Re Abbott Laboratories Norvir Antitrust Lit.*, 2007 WL 16899 **8-9 (N.D. Cal. 2007). Because there was no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members would be drawn, the district court in *Mazza* properly applied California law to those claims. And even if there were a conflict, California's "government interest" test as set forth above would support the application of California law to Plaintiff's unjust enrichment claim here.

### B. Under California Law, Common Issues Predominate

#### 1. Common Claims Predominate Under the UCL

##### a. Common Claims Predominate Under the Unfairness Prong of the UCL

The "unfairness prong of section 17200 of the Business and Professions Code is intended to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 111–112 (1972) (fn. omitted.) In consumer cases, as opposed to cases between competitors, the elements of an unfairness claim are as follows: "(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006). The first two factors turn on Lennox's conduct and the third factor concerns the objective reasonable consumer. Thus, this claim is readily amenable to class treatment. Indeed, in the case that Lennox cites, *Lozano v. AT & T Wireless Services, Inc.*, 504 F. 3d 718, 736 (9th Cir. 2007), the court affirmed certification of UCL unfairness claims.

Plaintiffs' unfairness theory of common class relief is not dependent upon some variance

over time in Lennox's warnings. Rather, plaintiffs' theory is that (1) a warning is not an adequate mechanism to address the manifest hazard posed by the Lennox fireplaces (See Carol Pollack- Nelson Decl. pp. 21:22- 24:27, (2) Lennox's marketing scheme prevents consumers from learning about the hazard prior to purchase; and (3) Lennox never advised consumers that the glass fronts reach 500 degrees and can cause third degree burns from momentary contact.

### b. Common Claims Predominate Under the Fraudulent Prong of the UCL.

For the first 22 pages of its Opposition Lennox ignores the objective reasonable consumer standard that applies to UCL and CLRA claims. Finally, on page 23, Lennox comes close to acknowledging the correct standard when it says, "Plaintiffs must show that reasonable members of the general public would likely be deceived." Opp. 23:19-20. This is, of course, an objective test -- obviating the need to examine the response of each individual member of an absent class of half a million (or, in many UCL/CLRA cases many millions). *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (claims under California' consumer protection statutes are evaluated from the standpoint of the "reasonable consumer," not from the standpoint of each individual class member). *See also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (objective reasonable consumer standard applies to CLRA claims); *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 510-513 (2003) (objective reasonable consumer standard applies to UCL claims). This is why the Court should certify the class: because it is the *objective reasonable consumer*, not each individual class member, who provides the standard by which these claims are tried.

Tellingly, Lennox cites *In re Tobacco II Cases*, 142 Cal. App. 4th 891 (2006) upholding decertification. Opp., 29:14-24. The California Supreme Court *reversed* this decision and ordered class certification reinstated, holding, "Relief under the UCL is available without individualized proof of deception, reliance and injury." *In re Tobacco II Cases*, 46 Cal. 4th at 320. The California Supreme Court so ruled even though the defendants' alleged misrepresentations varied over time. *See also Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (Cal. 1983) ("The court may also order restitution

without individualized proof of deception, reliance, and injury if it "determines that such a remedy is necessary 'to prevent the use or employment' of the unfair practice . . ." )  Plaintiffs' claims are particular amenable to class treatment since there was no effective warning to the Plaintiffs before purchase, *see  Day v. AT&T*, 63 Cal. App. 4th 325 (1998) (actionable omission where material consumer information is revealed only in materials predominantly available post-purchase).

Lennox has submitted declarations from retirees who say they know that fireplaces are "hot," as if this were the end of the analysis.  Apparently Lennox presented these retirees a materially inaccurate description of this litigation which ignored the injuries to children (Timmons Reply Decl., ¶¶ 2, 5).  The question, of course, is not whether a few retirees will say that fireplaces are "hot" but whether the reasonable consumer knows that these unguarded Lennox glass fronts are 500 degrees and pose a severe risk to children.  In a class of half a million, many of whom have children, two dozen cherry-picked residents of a childless retirement community who say fireplaces are "hot" is not the measure of whether a reasonable consumer knows that the glass fronts are 500 degrees.[6]  See Drogin Reply Decl. ¶ 8.  Rather, as consumer expert Carol Pollack-Nelson testifies, the reasonable consumer is not likely to realize that the glass front becomes "treacherously hot." Pollack-Nelson Decl., pp. 18:7- 19:18.  Indeed, reasonable consumers, such as the Keilholtzes, will expect that the unguarded glass is safe to touch without risk of serious burns.  *Id*. at 19:10- 20:3.

**2.     Common Issues Predominate With the CLRA Claims**

As with the UCL, so too, "[m]ateriality, for CLRA claims, is judged by the effect on a 'reasonable consumer.'"  *Falk v. GMC*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) quoting *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003); *see also Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005) ("Materiality is judged by the effect on a 'reasonable consumer,' and this standard applies to CLRA claims.")

---

[6] Similarly, the Khoslas were brought in as Lennox cross-defendants in a personal injury product defect action alleging infant third degree burns.  Wolden Reply Decl., ¶ 8.

      **a.**      **In An Omissions Case Under the California Consumer Protection Statutes, Materiality Is Determined By The Objective "Reasonable Consumer Standard," And Is Thus A Common Issue**

Plaintiffs' fraud prong and CLRA claims are based on Lennox's failure to disclose to consumers in advance of purchase that Lennox's unguarded glass fronts reach 500 degrees and can cause third degree burns on contact. Whether the omission is material in a CLRA and UCL case is judged not by its effect on two dozen cherry-picked members of a childless retirement community, nor by its effect on "each and every class member," but by the effect on a "reasonable consumer," *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). *See also Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 680 (2006) (conduct that is "likely to mislead a reasonable consumer" violates the CLRA as well as the UCL). *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 806 (2006) (under the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable consumer.)

Only at page 23 of its brief does Lennox finally come close to acknowledging that the standard is the effect on the reasonable consumer. Opp. at 23:19-20. Elsewhere, Lennox's brief is replete with erroneous references to "each and every class member," Opp. at 26:23-24, as if that were the standard -- which it is not.

      **b.**      **Causation In a Consumer Protection Omission Case Can Be Determined on a Class-Wide Basis by Proof of Materiality.**

Because materiality is based on an objective standard, under the CLRA and UCL, "causation as to each class member is commonly proved more likely than not" through a showing of materiality. *Massachusetts Mutual*, 97 Cal. App. 4th 1282, 1292-94 (2002).

> That showing will undoubtedly be conclusive as to most of the class. The fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all.

*Id.* at 1292.[7] *See also Chamberlan v. Ford Motor Co.* 369 F. Supp. 2d 1138, 1145-46 (N.D. Cal

---

[7] "Given the fact that plaintiffs' claim is based on a nondisclosure, the objective determination of when the nondisclosure should have been discovered seems readily amenable to class treatment." *Mass. Mutual*, 97 Cal. App. 4th at 1295.

2005) (causation in a CLRA omission case can be proven by a showing of materiality). As the California Supreme Court recently held, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation is material." *Tobacco II, supra*, 46 Cal. 4th at 327. "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'[.]"). *Id.*, at p. 327.[8]

Lennox's citation to *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) ignores that Plaintiffs have alleged an omission. *See Chamberlan*, 369 F. Supp. 2d. 1138, 144. Finally, *Poulos* concerns a federal RICO claim and, like *Mirkin*, a common law fraud case has nothing to do with California's consumer protection statutes.

Finally, Lennox relies on *Buckland v. Threshold Enterprises, Ltd.,* 155 Cal. App. 4th 798 (2007), and *Caro v. Procter & Gamble Co.,* 18 Cal. App. 4th 644 (1993), to attempt to overcome the proposition that causation and reliance can be proven by showing that an omission was material. In both of these cases, the named plaintiffs did not even believe their own claims, and therefore could not have been misled or deceived. *Buckland*, 155 Cal. App. 4th at 808-09, 811; Caro, 18 Cal. App. 4th. 668-69. In *Buckland*, the plaintiff purchased the defendant's product solely to establish standing. By contrast, here, the class representatives purchased a home with Lennox's Hazardous Fireplace without knowing what Lennox knew: that the fireplaces reach 500 degrees and will cause third degree burns on contact. But for Lennox's omissions, plaintiffs would not have been damaged.

### 3. Unjust Enrichment

A claim for unjust enrichment entails: (1) the receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). As *Mazza* shows, these claims are capable of resolution on a class-wide basis. S*ee also In Re Abbott Laboratories Norvir. Lit.*, 2007 W.L. 16898 at \*\*8-9.

---

[8] Of note is the *Tobacco II* Court's conclusion that the availability of alternative information regarding the product's safety does not necessarily defeat that reliance. *Id.*, at p. 328.

### C. Differences in Damages Among Class Members Do Not Defeat Class Certification

Lennox fails to address the well-established principle that differences in damages among class members do not defeat class certification. *In re Mercedes-Benz TeleAid Contract Litigation*, *supra*, 2009 U. S. Dist. LEXIS 35595 at **83-84.

*Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746 (2003) is not on point. There, plaintiff sued an internet stock trading service alleging that the service's contracts were unconscionable in providing that the customer's accounts and trading rights could be terminated without notice or reason. The contract's termination provision did not, of itself, cause any customer to suffer damage. 120 Cal. App. 4th at 755-56. The only customers who might have been damaged were those who were unable to trade stock when their trading rights had been suspended or terminated, and who later had to pay more to purchase a stock or take less in selling it. The named plaintiff, for example, claimed that he was unable to sell stock at a favorable price because his account had mistakenly been suspended without notice; he was able to sell the stocks later that day but by then the price had dropped substantially and he lost $20,000. *Id.* at 750. Each individual class member would have to litigate numerous questions concerning the values of stock purchases that they would have liked to have made. *Id*. at 756-77. A precise damage formula is not necessary at this stage, so long as "damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods." *Klay v. Humana, Inc.,* 382 F. 3d 1241, 1259-60 (11th Cir. 2004).

## V. TYPICALITY AND ADEQUACY ARE PRESENT

### A. The Class Representatives Will Adequately Represent the Class.

Plaintiff's opening Memorandum demonstrated that the class representatives are adequate and typical. In *Mazza*, where the court certified a nationwide class for the same claims alleged here, the Court stated:

> The class representatives' claims need not be identical or even substantially identical. The representatives' claims need only be similar: "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Indeed, some degree of individuality is to be expected in all cases. *Armstrong*, 275 F.3d at 868 (citing *Staton*, 327 F.3d at 957). Courts look to whether class members have [**15] similar injuries, "whether the

>action is based on conduct which is not unique to the named plaintiffs," and whether other class members were injured by the same conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Dukes*, 474 F.3d at 1232; *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985). The purpose of the typicality requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.
>
>In this case, Plaintiffs' and the proposed class members' claims all arise from Honda's alleged omission of the CMBS System's limitations, giving rise to the same, class-wide injury type.

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 619 (C.D. Cal. 2008); *see also Newberg on Class Actions* (4th ed. 2002) §3:30 at 442 (As a general rule, disapproval of the action by some class members should not be sufficient to preclude a class action on the ground of inadequate representation.)

### B.  Proposed Class Counsel Are Adequate

Lennox contends that proposed class counsel has a conflict of interest given its concurrent status as counsel in this action and a stayed California class action, the *Fields* Action. Plaintiffs disagree.

Through initial discovery in the *Fields* Action (a California-only class) and in a related personal injury action, *Wooldridge v. Superior Fireplaces*, *et al.*, plaintiffs' counsel learned of the extensive connection between the state of California and the development, manufacture and distribution of defendants' Hazardous Fireplaces. Since, based on this information, California law can apply to a national class, Plaintiffs' counsel filed this federal court action seeking the same remedies as in the *Fields* Action on behalf of a national class of Hazardous Fireplace purchasers. The *Fields* action was subsequently stayed by the Sacramento Superior Court. Wolden Reply Decl., Ex. 4.

Ignoring that only one of the two actions is active, simultaneous representation does not create a basis for proposed class counsel's disqualification. *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 425 (N.D.Cal.2008). Opp., 36:20-22. Lennox argues that it does not have the resources to satisfy the exposure in "both the Fields and Kielholtz class actions." Opp., 36:23. However, as the State Court in the *Fields* Action correctly observed, the claims in the *Fields* Action are "subsumed within" and the "same" as those in *Keilholtz*. The classes could not and do not seek

1    recovery for the same injury in both proceedings.  Second, Lennox misleads the court regarding
2    defendants' ability to pay the single award class members seek.  Lennox refers to the worth of
3    subsidiary Lennox Hearth to assert that "defendants" are not sufficiently capitalized to "satisfy
4    the alleged liability[.]"  Opp., 36:20-21.  This argument conveniently ignores the vast resources
5    of Lennox International which, as of May 2009, was disclosed to have a corporate market value
6    of nearly 1.4 billion dollars.  Wolden Reply Decl., ¶6, Ex. 5.  As in *Moreno*, defendants fail to
7    articulate "how counsel's simultaneous representation might undermine its ability to adequately
8    represent each class", particularly here where one of the two actions has been stayed.  *Moreno*,
9    251 F.R.D. at 425.
10        Lennox further claims that proposed class counsel has not been diligent in its
11   representation of the class.  Issues regarding both the service of the CLRA notice and service of
12   the complaint, counsel respectfully submits, have been exaggerated by the defense with Lennox's
13   participation in those complications under-reported.  Wolden Reply Decl., ¶7.
14        Regarding Lennox's attack on ethical grounds, Plaintiffs note that Judge Illston made no
15   specific finding on the ability of proposed class counsel to adequately represent the proposed
16   class.  Regarding Lennox's claim that proposed class counsel has approached homeowners,
17   including the Keilholtzes and Perrys, as part of their investigation of consumer experience with
18   Hazardous Fireplaces and to identify fireplaces to test, the deposition testimony relied on by
19   Lennox shows nothing improper.  *Rose v. State Bar,* 262 Cal.3d 646, 649 ("An attorney who
20   contacts accident victims for legitimate investigative purposes is not barred from representing
21   them if requested to do[.]"); *see also Mevorah v. Wells Fargo Home Mortg., Inc.*, 2005 WL
22   4813532, 3 (N.D.Cal. 2005) ("Pre-certification communications to potential class members by
23   both parties are generally permitted, and also considered to constitute constitutionally protected
24   speech.")
25        In the end, proposed class counsel has presented a viable and worthy class action which
26   promotes the important social goal of preventing serious burns.  Proposed class counsel is
27   confident that "the Court is capable of ensuring through oversight that [proposed class counsel]
28   manages this litigation for the benefit of prospective class members[.]"  *Moreno*, *supra*, 251

F.R.D. at pp. 425-426.

## VI. A CLASS ACTION IS THE SUPERIOR METHOD FOR FAIR AND EFFICIENT ADJUDICATION OF THIS CONTROVERSY.

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class action is superior if no realistic alternative exists. *See Valentino*, 97 F.3d at 1234-1235.

Here there is no doubt that resolution of the common liability issue will reduce litigation costs and promote greater efficiency. As Plaintiffs have demonstrated, common issues predominate. While the amounts of the claims involved are not trivial, they are small in comparison to the cost of unlimited civil litigation. Class treatment is the only way to assure that redress is available for Lennox's Hazardous Fireplaces.

## VII. THE CLASS TIME PERIOD IS PROPER WITH RESPECT TO CALIFORNIA.

In ruling on the motion to dismiss, the Court did not consider the pendency of the Field action, which tolled the statute of limitations for California residents. *See San Francisco Unified School District v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1336-37 (1995) [filing of class action tolls statute for all class members].

## VIII. CONCLUSION

For reasons set forth above, the motion for class certification should be granted.

Respectfully submitted,

DATED: October 27, 2009    By:    */s/ Michael F. Ram*
Michael F. Ram (SBN 104805)
RAM & OLSON LLP
mram@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Tel: (415) 433-4949; Fax: (415) 433-7311
*Attorneys for Plaintiffs and the Class*