**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
                                          No. C 08-00836 CW
11
KIRK KEILHOLTZ and KOLLEEN KEILHOLTZ
12 for themselves and on behalf of those    ORDER GRANTING
similarly situated,                       PLAINTIFFS' MOTION
13                                         FOR CLASS
              Plaintiffs,                  CERTIFICATION
14
         v.
15
LENNOX HEARTH PRODUCTS INC.; LENNOX
16 INTERNATIONAL INC.; LENNOX INDUSTRIES
and DOES 1 through 25, Inclusive,
17
              Defendants.
18 _____/

19
         This case involves the sale of single-paned sealed glass-front

20 gas-burning fireplaces.  Plaintiffs claim that the sale of these

21 fireplaces violates the California Unfair Competition Law (UCL),

22 California Business & Professions Code § 17200; the Consumer Legal

23 Remedies Act (CLRA), California Civil Code § 1750; and the doctrine

24 of unjust enrichment.  Plaintiffs have filed a motion for class

25 certification.  Defendants[1] oppose the motion.  The matter was

26

27 _____

28      [1]Defendants Lennox Industries and Lennox International are two
   of the three parent companies of Defendant Lennox Hearth Products.

taken under submission on the papers.  Having considered all of the

papers filed by the parties, the Court grants Plaintiffs' motion.

BACKGROUND

On February 6, 2008, Plaintiffs filed this putative class

action on behalf of themselves and all similarly situated persons

who are the owners of homes in which Defendants' glass-enclosed gas

fireplaces are installed.  According to Plaintiffs' fourth amended

complaint (FAC), Defendants are the "developers, designers,

manufacturers, assemblers, testers, inspectors, marketers,

advertisers, distributors and sellers of Superior[2] and Lennox brand

single pane sealed glass front gas fireplaces."  FAC ¶ 8.

Plaintiffs allege that Defendants sold the fireplaces with the

specific intention of having builders install them in homes

throughout the United States.  FAC ¶ 14.  By selling the

fireplaces, Defendants represented to consumers that they were

"safe, of mercantile quality, and fit for their intended and

reasonably foreseeable uses, and had sufficient protections and

warnings regarding potential dangers and hazards which reasonable

consumers would expect and assume to be provided in order to make a

decision whether to purchase a home installed with [the fireplace]

or purchase [a fireplace]."  Id.

Plaintiffs further allege that Defendants failed to disclose

or concealed the fact that the fireplaces are dangerous and unsafe

given that the unguarded single pane glass-sealed front may reach

temperatures in excess of 475 degrees Fahrenheit, which may cause

---

[2]Superior was acquired by Defendants in 1998.  FAC ¶ 17b.

2

1    third degree burns to skin contacting the glass.  Id. at ¶ 15.

2    Lastly, Plaintiffs allege that because of Defendants' conduct and

3    omissions, members of the putative class came to own residential

4    homes in which the fireplaces were installed.  Id. at ¶ 16.

5         On March 30, 2009, the Court granted in part Defendants' first

6    motion to dismiss the complaint.  Plaintiffs were granted leave to

7    amend and they filed a second amended complaint on June 1, 2009.

8    On September 8, 2009, the Court granted Defendants' second motion

9    to dismiss the time-barred UCL, CLRA and unjust enrichment claims.

10   Thus, Plaintiffs' CLRA and unjust enrichment claims arising outside

11   of the three-year statute of limitations and their UCL claims

12   arising outside of the four-year statute of limitations were

13   dismissed.

14        Plaintiffs now move to certify a class consisting of:

15       All consumers who are residents of the United States and who
         own homes or other residential dwellings in which one or
16       more Superior or Lennox brand single-pane sealed glass front
         fireplaces have been installed since February 6, 2004 and
17       all consumers who are residents of California and own homes
         or other residential dwellings in which one or more Superior
18       brand single-pane glass sealed front fireplaces have been
         installed since March 1, 2003.
19
20       "Consumer" means an individual who bought his or her home or
         fireplace for personal, family, or household purposes.
21
         Excluded from the class are (1) the judge to whom this case
22       is assigned and any member of the judge's immediate family;
         and (2) anyone who suffered personal injury related to
23       Defendants' fireplaces.

24   Motion for Class Certification at 2-3.

25                            LEGAL STANDARD

26        Plaintiffs seeking to represent a class must satisfy the

27   threshold requirements of Rule 23(a) as well as the requirements

28                                    3

United States District Court
For the Northern District of California

for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

4

**United States District Court**
For the Northern District of California

1      (B) the extent and nature of any litigation
2  concerning the controversy already begun by or
    against class members;

3      (C) the desirability or undesirability of
    concentrating the litigation of the claims in the
4      particular forum; and

5      (D) the likely difficulties in managing a class
    action.
6

Fed. R. Civ. P. 23(b).

    Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden.  General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).  In making this determination, the court may not consider the merits of the plaintiffs' claims. Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).  Rather, the court must take the substantive allegations of the complaint as true.  Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).  Nevertheless, the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action.  Burkhalter, 141 F.R.D. at 152.  In addition, the court may consider supplemental evidentiary submissions of the parties.  In re Methionine Antitrust Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001) (Methionine I); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a);" however, "it is improper to

advance a decision on the merits at the class certification stage"). Ultimately, it is in the district court's discretion whether a class should be certified. Burkhalter, 141 F.R.D. at 152.

DISCUSSION

In addition to challenging Plaintiffs' class certification, Defendants also argue that Plaintiffs lack standing to assert their claims. The Court addresses the standing issues first.

I.   Standing

The standing inquiry asks whether a plaintiff has suffered an actual or imminent injury that is fairly traceable to the defendant's conduct and that is likely to be redressed by a favorable court decision. Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008). Defendants argue that Plaintiffs lack standing because the reason they no longer use their fireplace has no causal connection to the allegations in their complaint. Defendants argue that Plaintiffs testified that they no longer use the fireplace because it makes the room too warm, not because of any safety concerns. However, this reading misstates Plaintiffs' testimony. Plaintiff Kolleen Keilholtz testified that the fireplace would be "uncomfortable for a majority of people . . . [b]ecause of how fast it heats the room." Warne Decl., Exh. V, Kolleen Keilholtz Dep. at 34:18-22. She did not directly state that she stopped using the fireplace only because it heats the room too quickly. In fact, she stated that once she found out that the fireplace could cause third-degree burns, she "ceased using [her] Superior fireplace given the hazard it poses."

1   Kolleen Keilholtz Decl. ¶ 6.

2       Defendants also argue that Plaintiffs lack standing because

3   they did not suffer any injury from the fireplace.  Defendants rely

4   on Kirk Keilholtz's answer to the following question during a

5   deposition:

6           Q: And do you believe "the [inclusion of the fireplace
            in your home has] caused you any loss or property damage
7           of any kind?"
            A:   I don't believe so.
8
    However, Mr. Keilholtz has since clarified his response: "The
9
    fireplace hasn't caused any fires or injured anyone in my family,
10
    but it is a liability.  The loss that I have suffered is the one
11
    that this lawsuit is about, which includes paying for a fireplace
12
    that my family cannot use."  Wolden Decl., Exh. 3.  Ms. Keilholtz
13
    has also stated that she "would not have paid for or even allowed
14
    the Superior fireplace to have been installed in my home had I been
15
    advised of the high glass surface temperature it generates during
16
    operation."  Kolleen Kielholtz Decl. ¶ 6.  Therefore, Plaintiffs
17
    have satisfied the causation and injury elements of the standing
18
    requirement.
19
    II.  Class Definitions
20
        Defendants argue that class certification must be denied
21
    because Plaintiffs' proposed class definition is not precise and
22
    the identity of the class members is not objectively ascertainable.
23
    "An adequate class definition specifies 'a distinct group of
24
    plaintiffs whose members [can] be identified with particularity.'"
25
    Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 593 (E.D.
26
    Cal. 2008) (quoting Lerwill v. Inflight Motion Pictures, Inc., 582
27

28                                     7

F.2d 507, 512 (9th Cir. 1978).  "The identity of class members must be ascertainable by reference to objective criteria."  5 James W. Moore, Moore's Federal Practice, § 23.21[1] (2001).  Thus, a class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, the class definition meets this standard.  The definition of the class is relatively straightforward.  Class members must (1) live in the United States and (2) own a home within which a Superior or Lennox brand single-paned sealed glass front fireplace was installed after a particular date.  This definition is not subjective or imprecise.  Unnamed Plaintiffs will be able to identify the alleged offending products by viewing the exposed face of their fireplace, which will either bear the name Superior or Lennox.

Defendants argue that the class is unascertainable because the class includes original and subsequent purchasers of homes with the offending fireplace but, under California law, a homeowner's claim is not transferable absent an express assignment.  See Krusi v. S.J. Amoroso Construction Co., 81 Cal. App. 4th 995, 1005 (2000). Defendants assert that it would be too difficult to locate the original homeowners.  Although finding these individuals may be challenging, the task is not so formidable as to make the class unascertainable.

Defendants also argue that the class definition improperly includes consumers in California who had a Superior fireplace

installed after March 1, 2003 instead of February 6, 2004. Plaintiffs argue that the class period should begin on March 1, 2003 because the statute of limitations was tolled by the March 1, 2007 filing of the related state court class action, <u>Fields v. Superior Fireplace Company, et al.</u>, No. 07-AS00918 (Sac. Cty. Sup. Ct.).  <u>See</u> Warne Decl., Exh. A.  That case was stayed pending the outcome of the present case.  However, Plaintiffs may not include individuals with claims accruing before February 6, 2004 in their class definition because their claims are outside of the three year statute of limitations for the CLRA and unjust enrichment claims and the four year statute of limitations for the UCL claims.  The Court has already dismissed the claims outside of these statutes of limitations.

II.  Rule 23(a) Requirements

    A.  Numerosity

    Although the parties do not agree as to the exact size of the class, Defendants appear to concede that the number of individuals who own one of their glass-enclosed gas fireplaces is large enough to satisfy the numerosity requirement.  In fact, Defendants estimate that 556,639 of their fireplaces were sold to individuals who would be included in the class.  The Court therefore finds that the numerosity requirement has been satisfied.

    B.  Commonality

    Rule 23 contains two related commonality provisions.  Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(b)(3), in turn, requires that such common questions predominate over individual

9

ones.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Rule 23(b)(3), in contrast, requires not just that some common questions exist, but that those common questions predominate. In Hanlon, the Ninth Circuit discussed the relationship between Rule 23(a)(2) and Rule 23(b)(3):

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

Id. at 1022 (citations and internal quotation marks omitted).

Although Defendants assert that this case does not satisfy Rule 23(a)'s commonality provision, their arguments actually focus on whether common issues predominate, and thus are more appropriately directed at the issue of certification under Rule 23(b)(3), discussed below. Rule 23(a)(2) only requires that there

10

be <u>some</u> common issues of fact and law.  The class members' claims clearly have something vital to this case in common: all class members own a home in which one of Defendants' fireplaces has been installed and their claims are based on a common theory of liability.  Rule 23(a)(2)'s commonality requirement has therefore been satisfied.[3]

C.   Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." <u>Falcon</u>, 457 U.S. at 156 (quoting <u>E. Tex. Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted).  The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992).  Rule 23(a)(3) is satisfied where the named plaintiffs have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named

_____

[3]Defendants object to Plaintiffs' declaration of Carol Pollack-Nelson offered to establish the commonality and typicality requirements of class certification.  Defendants argue that this declaration lacks the foundation necessary to qualify as an expert opinion.  On a motion for class certification, the Court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims.  Therefore, "the Federal Rules of Evidence take on a substantially reduced significance, as compared to a typical evidentiary hearing or trial." <u>Fisher v. Ciba Specialty Chem. Corp.</u>, 238 F.R.D. 273, 279 (S.D. Ala. 2006) ("the Federal Rules of Evidence are not stringently applied at the class certification stage because of the preliminary nature of such proceedings").  On a motion for class certification, the Court may consider evidence that may not be admissible at trial.  Therefore, the Court overrules Defendants' objection.

United States District Court
For the Northern District of California

plaintiffs, and other class members have been injured by the same course of conduct. Id. Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), cert. denied, 498 U.S. 1025 (1991)).

Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings. Plaintiffs' claims are "reasonably co-extensive with those of absent class members." Hanlon, 150 F.3d at 1020. Defendants point to particular facts that are unique to Plaintiffs' claims -- in particular, the facts that Plaintiffs purportedly did not read the entire manual for the fireplace when they bought their home and that the warnings in their manual may have differed from those of other unnamed class members. These particularities, however, do not render Plaintiffs' claims atypical in the sense that they differ from the claims of most class members. In actuality, Defendants' argument goes to whether the claims can be proved on a class-wide basis or whether, instead, no class member's claims can be established without looking at the particular circumstances of that class member. Thus, this issue is more appropriately characterized as going to Rule 23(b)(3)'s predominance requirement, and is discussed below. Accordingly, the Court concludes that Plaintiffs' claims are typical of those of other class members.

D.   Adequacy

Rule 23(a)(4)'s adequacy requirement ensures that absent class

United States District Court
For the Northern District of California

members are afforded adequate representation before entry of a judgment which binds them. <u>Hanlon</u>, 150 F.3d at 1020. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Id.</u> Defendants advance three arguments for disqualifying the Arnold Law Firm, Cory Watson and Ram & Olsen as counsel, but the Court find all these arguments unpersuasive.

### 1.    Conflict of Interest

Defendants argue that the Arnold Law Firm and Cory Watson must be disqualified because they represent Anissa and Jerry Fields in the closely related state court class action, <u>Fields v. Superior Fireplace Company, et al.</u> No. 07-AS00918. <u>See</u> Warne Decl., Exh. A. Defendants rely primarily on <u>Kayes v. Pacific Lumber Co</u>, 513 F.3d 1449, 1465 (9th Cir. 1995), in which the Ninth Circuit held that even the appearance of divided loyalties justifies disqualification of class counsel. The court explained, "The 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict." <u>Id.</u> Here, Defendants have not explained how the Arnold Law Firm's and Cory Watson's simultatenous representation might undermine their ability to adequately represent each class. There is no evidence that the <u>Fields</u> plaintiffs and Plaintiffs in the present case have antagonistic interests. Defendants appear to be able to satisfy a judgment in both cases. <u>See</u> <u>Sullivan v. Chase Inv. Serv., Inc.</u>, 79 F.R.D. 246, 258 (N.D. Cal. 1978).

13

**United States District Court**
For the Northern District of California

2.    Vigorous Prosecution of the Action

Defendants assert that Plaintiffs' counsel's past actions indicate that they will not prosecute the action vigorously.  To support this argument, Defendants note that Plaintiffs' counsel failed to serve one of the named Defendants, Lennox Industries, until recently.  However, Lennox Industries was recently added as a Defendant on September 3, 2009 and Plaintiffs served it within the 120 day requirement of Federal Rule of Civil Procedure 4(m).  Lennox Industries never challenged the adequacy of service.  Defendants also argue that Plaintiffs' counsel's difficulty in complying with the CLRA notice requirements demonstrate that they are inadequate to pursue this action vigorously.  The Court disagrees.  Although Plaintiffs' counsel's travails with the CLRA notice gave the Court pause, they are not sufficient to show inadequacy.

3.    Alleged Unethical Conduct

Defendants argue that proposed class counsel's unethical conduct warrants a finding of inadequacy.  Defendants point to two incidents.  In the first, before this case was transferred to this Court, another judge of this Court found that Plaintiffs' counsel engaged in "judge shopping, a practice that abuses the integrity of the judicial system by impairing public confidence in the impartiality of judges."  Warne Decl., Exh. J at 3:22-24.  In the second, Defendants allege that Plaintiffs' counsel sent an investigator "door-to-door in a subdivision within this judicial district to recruit individuals to serve as class representatives."  Opposition at 37-38.  Defendants assert that this conduct violates

14

California Rule of Professional Conduct 1-400, which prohibits attorneys and their agents from soliciting prospective clients in person or over the telephone.  See also Cal. Bus. & Prof. Code § 6151(a).  Plaintiffs' counsel respond that they approached homeowners as part of their investigation, and not as part of a solicitation effort.  See Rose v. State Bar, 49 Cal. 3d 646, 649 (1989) ("An attorney who contacts accident victims for legitimate investigative purposes is not barred from representing them if requested to do so, but it is misconduct to directly solicit such employment.").  Although Defendants' solicitation allegations are troubling, without further evidence, the Court will not make any findings as to the propriety of Plaintiffs' counsel's conduct.  By itself, Plaintiffs' counsel's judge shopping does not disqualify counsel.  Accordingly, the Court finds that Plaintiffs' counsel is adequate.

III. Certification Under Rule 23(b)(3)

    A.   Predominance

    "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).

        1.   Predominance of Legal Issues:  Choice of Law

    Defendants argue that common issues do not predominate because

15

the proposed nation-wide class would be subject to myriad legal issues arising from the application of various state laws. Plaintiffs address this issue by proposing the application of California law to the nation-wide class.  Defendants respond that to do so would violate due process.

To apply California law to claims by a class of nonresidents without violating due process, the Court must find that California has a "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum state's] law is not arbitrary or unfair." Phillips Petroleum, Co. v. Shutts, 472 U.S. 797, 821-22 (1995). "When considering fairness in this context, an important element is the expectation of the parties." Id. at 822.

The parties dispute the contacts Defendants maintain in California.  Plaintiffs claim that in "the last decade, 82% of the hazardous fireplaces sold under the Superior brand[4] were manufactured in California."  The more relevant time period is that within the statute of limitations: three years for the CLRA and unjust enrichment claims and four years for the UCL claims.

Defendants have provided sales and manufacturing information going back to February 1, 2004.  Since that date, Defendants have sold 556,369 Superior and Lennox brand gas fireplaces with a sealed, single-pane glass front.  Sabin Decl. ¶ 3.  Of those,

---

[4]Plaintiffs assert that they only refer to Superior brand sales because Defendants did not provide them with information pertaining to Lennox brand sales before they filed their motion for class certification.

16

105,748 (nineteen percent) were sold to distributors, retailers or installers within California. Id. at 6. Although nineteen percent does not represent a simple majority of Defendants' overall sales, it exemplifies a significant amount of contact between Defendants and California.[5]

Defendants manufacture, assemble and package their fireplaces in Lynwood, California; Union City, Tennessee; Toronto, Canada; and Auburn, Washington. Dischner Decl. ¶ 5. Since February 1, 2004, 117,016 fireplaces (twenty-one percent) were exclusively manufactured, assembled and packaged outside of California and 17,628 (three percent) were exclusively manufactured, assembled and packaged inside of California. The remaining 421,725 (seventy-six percent) were partly manufactured, assembled or packaged at plants in California and partly in at least one other state. Although many fireplaces were produced exclusively outside of California, the fact that seventy-six percent maintained a production connection to California weighs in favor of finding that applying California law to the class claims would not be arbitrary or unfair. Plaintiffs have shown that a significant portion of Defendants' alleged harmful conduct emanated from California. Overall, this class action involves a sufficient degree of contact between Defendants' alleged conduct, the claims asserted and California to satisfy due process concerns. See Parkinson v. Hyundai Motor America, 258 F.R.D. 580, 597-98 (C.D. Cal. 2008);

_____

[5]The parties only provided two categories of sales data: California and non-California sales. Therefore, the Court cannot determine whether California sales constitute a plurality of Defendants' overall sales.

United States District Court
For the Northern District of California

Mazza v. American Honda Motor Co., 254 F.R.D. 610, 620-21 (C.D. Cal. 2008).

Defendants argue that, even if Plaintiffs' claims against them comport with due process, choice of law principles do not support the application of California law. However, the Court notes that it must apply California law to California statutory claims. Even if the consumer protection and unfair competition statutes of other states differed considerably from those in California, Defendants are in no position to force Plaintiffs or unnamed class members to sue under the statutes of those states. If they wish, unnamed class members may opt out of the current class action and attempt to sue Defendants under the statutes of their state of residence.

Although the Court finds it unnecessary to engage in a choice of law analysis in order to apply California law to California statutory claims, state and federal courts in California have conducted such an analysis. See e.g., Parkinson, 258 F.R.D. at 597-98; Mazza, 254 F.R.D. at 620-21; Wershba v. Apple Computer, 91 Cal. App. 4th 224, 241-44 (2001). Therefore, the Court will do so as well. The same choice of law analysis will apply to the unjust enrichment claim.

Because applying California law to Plaintiffs' claims against Defendants comports with due process, the Court presumes that such law applies to the claims of the nation-wide class unless Defendants meet the "substantial burden" of showing that foreign law, rather than California law, applies. Martin v. Dahlberg, 156 F.R.D. 207, 218 (N.D. Cal. 1994); see Church v. Consolidated Freightways, 1992 WL 370829, *4 ("This Court generally presumed

18

that California law will apply unless defendants demonstrate

conclusively that the laws of the other states will apply.").

"When a federal court sitting in diversity hears state law

claims, the conflicts laws of the forum state are used to determine

which state's substantive law applies." <u>Orange Street Partners v.</u>

<u>Arnold</u>, 179 F.3d 656, 661 (9th Cir. 1999).  The Court thus looks to

California choice of law doctrine to determine whether to apply

California law or some other state's law to the claims.

California has adopted the "governmental interest" approach to

choice of law issues.  As the California Supreme Court has

explained,

> the governmental interest approach generally involves
> three steps.  First, the court determines whether the
> relevant law of each of the potentially affected
> jurisdictions with regard to the particular issue in
> question is the same or different.  Second, if there is a
> difference, the court examines each jurisdiction's
> interest in the application of its own law under the
> circumstances of the particular case to determine whether
> a true conflict exists.  Third, if the court finds that
> there is a true conflict, it carefully evaluates and
> compares the nature and strength of the interest of each
> jurisdiction in the application of its own law to
> determine which state's interest would be more impaired
> if its policy were subordinated to the policy of the
> other state, and then ultimately applies the law of the
> state whose interest would be the more impaired if its
> law were not applied.

<u>Kearney v. Salomon Smith Barney, Inc.</u>, 39 Cal. 4th 95, 107-08

(2006) (citation and internal quotation marks omitted).  "A party

advocating application of foreign law must demonstrate that the

foreign rule of decision will further the interest of that foreign

state and therefore that it is an appropriate one for the forum to

apply to the case before it." <u>Tucci v. Club Mediterranee, S.A.</u>, 89

Cal. App. 4th 180, 188-89 (2001).  If California law can be applied

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

without violating the policy of the foreign state, there is a false
conflict, and California law should be applied.  See id.

Defendants argue that the consumer protection statutes of the
non-forum states are different from those of California and they
attach an appendix which catalogues state-by-state variations
involving reliance, scienter, damages and other elements necessary
to Plaintiffs' claims.  See Appendix of State Law Variations.
Although Defendants have pointed out variations between California
law and the relevant law in other jurisdictions, Defendants have
not met their burden of showing that the differences between
California law and that of the other jurisdictions are material.
See Washington Mutual Bank v. Superior Court of Orange County, 24
Cal. 4th 906, 919-20 (2001) (difference among the state laws must
be material).

For instance, Defendants argue that Plaintiffs suing under the
UCL in California are limited to restitution and injunctive relief
but similar laws in other jurisdictions permit greater relief, such
as actual damages, treble damages, punitive damages and attorneys'
fees.  However, "a CLRA violation, which serves as a predicate to a
UCL violation under the UCL's 'unlawful' prong, provides for each
of the remedies that Defendant[s] contend[] would be unavailable
with the application of California law to a nationwide class."
Mazza, 254 F.R.D. at 622.

Defendants also argue that the unjust enrichment laws of the
fifty states vary such that a material conflict exists.  Although
many states follow the Restatement's definition of unjust
enrichment, not all do.  See In re Terazosin Hydrochloride, 220

20

F.R.D. 672, 697 (S.D. Fla. 2004).  Laws concerning unjust

enrichment do vary from state to state.  But differences in state

laws do not always outweigh the similarities, especially in cases

concerning unjust enrichment claims.  See, e.g., Westways World

Travel, Inc. v. AMR Corp., 218 F.R.D. 223, 2240 (C.D. Cal. 2003)

(certifying nation-wide class of unjust enrichment claimants).  As

noted in Schumacher v. Tyson Fresh Meats, Inc., 221 F.R.D. 605, 612

(D. S.D. 2004),

> Where federal claims and common law claims are predicated on
> the same factual allegations and proof will be essentially the
> same, even if the law of different states might ultimately
> govern the common law claims -- an issue that need not and is
> not decided at this juncture -- certification of the class for
> the whole action is appropriate.  The spectre of having to
> apply different substantive laws does not warrant refusing to
> certify a class on the common-law claims.

(quotations and alteration omitted); see also Hanlon, 150 F.3d at

1022 ("Variations in state law do not necessarily preclude a

23(b)(3) action.").

Here, the variations among some states' unjust enrichment laws

are not material because they do not significantly alter the

central issue or the manner of proof in this case.  Common to all

class members and provable on a class-wide basis is whether

Defendants unjustly profited from the sale of their fireplaces.

See Schumacher, 221 F.R.D. at 612 ("In looking at claims for unjust

enrichment, we must keep in mind that the very nature of such

claims requires a focus on the gains of the defendants, not the

losses of the plaintiffs.  That is a universal thread throughout

all common law causes of action for unjust enrichment.").  The

"idiosyncratic differences" between state unjust enrichment laws

21

"are not sufficiently substantive to predominate over the shared claims."  See Hanlon, 150 F.3d at 1022.  Overall, Defendants have not shown that the differences among the various state laws are material.  Therefore, the Court need not move beyond the first step in the choice of law analysis.  Accordingly, common issues of law predominate, as required by Rule 23(b)(3).

2.   Predominance of Factual Issues

Defendants argue that, irrespective of the choice of law issues, individual factual issues preclude class certification.  Determining whether common questions predominate on any of the three claims asserted in this action requires an analysis of the elements of those claims.

a.   UCL

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  It incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  Saunders v. Superior Ct., 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law."  Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).  With respect to fraudulent conduct, the UCL prohibits any activity that is "likely to deceive" members of the public.  Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal. App. 4th 638, 645 (2008).

United States District Court
For the Northern District of California

Plaintiffs assert that Defendants' knowing sale of their allegedly hazardous fireplaces and failure to inform Plaintiffs and unnamed class members that Defendants' fireplaces could reach temperatures of 475 degrees and cause third-degree burns on contact generally constitute unfair and deceptive business practices. Defendants argue that proving this claim requires an inquiry into the specific warnings each putative class member received and an assessment of whether those warnings would have misled reasonable members of the public. However, the California Supreme Court has held, "Relief under the UCL is available without individualized proof of deception, reliance and injury." In re Tobacco II Cases, 46 Cal. 4th 298, 320 (2009). Although there may be individual variations concerning the warnings class members received with their fireplaces, they do not undermine the conclusion that common issues predominate on the UCL claim. As the California Court of Appeal noted in Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1292-93 (2002),

> The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all. Thus, it is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.

(Internal quotation marks and citations omitted). Therefore, Plaintiffs may prove with generalized evidence that Defendants' conduct was "likely to deceive" purchasers of their fireplaces. However, "should it develop that class members were provided such a variety of information that a single determination as to

23

materiality is not possible, the trial court has the flexibility to order creation of subclasses or to decertify the class altogether." Id. at 1294 n.5

### b.   CLRA

The CLRA makes it unlawful to use "unfair methods of competition or deceptive acts or practices" in the sale of goods or services to a consumer.  Cal. Civ. Code § 1770(a).  Such unlawful conduct includes "representing that goods or services have . . . characteristics[,] . . . uses, benefits, or qualities which they do not have," and "representing that goods or services are of a particular standard, quality, or grade . . . if they are of another."  Id. §§ 1170(a)(5) and (7).

Defendants argue that individual factual issues preclude certification because Plaintiffs' CLRA claims require claimant-specific inquiries into causation, reliance and damages.  However, "the causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment."  Mass. Mut., 97 Cal. App. 4th at 1292.  "Causation as to each class member is commonly proved more likely than not by materiality.  That showing will undoubtedly be conclusive as to most of the class."  Id.  As noted above, common questions predominate even if Defendants can defeat the showing of causation as to a few individual class members.  Id.  As long as Plaintiffs can show that material misrepresentations were made to the class members, an inference of reliance arises as to the entire class.  Id. at 1292-93.  Materiality is determined from the perspective of the reasonable consumer.  See Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Plaintiffs' CLRA claim is based on Defendants' alleged failure adequately to disclose to consumers that Defendants' fireplaces could reach temperatures of 475 degrees and cause third-degree burns on contact. Here, the "ultimate question of whether the undisclosed information [is] material [is] a common question of fact suitable for treatment in a class action." <u>Mass. Mut.</u>, 97 Cal. App. 4th at 1294. Therefore, common issues will predominate on the CLRA claim. However, as noted above, the Court may create subclasses or decertify the class if a single determination of materiality is not possible. <u>Id.</u> n.5

c.   Unjust enrichment

Plaintiffs sufficiently show that common factual issues predominate as to this claim. The common question of whether Defendants' alleged failure to warn Plaintiffs and unnamed class members that Defendants' fireplaces reach temperatures of 475 degrees and cause third-degree burns on contact induced Plaintiffs and unnamed class members to buy homes with those fireplaces installed therein predominates over any questions affecting only individual members.

B.   Superiority

The Court finds that adjudicating class members' claims in a single action would be superior to maintaining a multiplicity of individual actions involving similar legal and factual issues. Although Defendants argue that class action treatment is not superior because they believe individual questions will predominate, they do not identify any other reason why individual actions would be preferable. The Court concludes that this action

25

1  satisfies Rule 23(b)(3)'s superiority requirement.

2                              CONCLUSION

3       For the foregoing reasons, the Court grants Plaintiffs' motion

4  for class certification.  Docket No. 126.  The following class is

5  hereby certified pursuant to Fed. R. Civ. P. 23(a) and (b)(3):[6]

6          All consumers who are residents of the United States and who
           own homes or other residential dwellings in which one or
7          more Superior or Lennox brand single-pane sealed glass front
           gas fireplaces have been installed since February 6, 2004
8          and all consumers who are residents of California and own
           homes or other residential dwellings in which one or more
9          Superior brand single-pane glass sealed front gas fireplaces
           have been installed since February 6, 2004.
10
           "Consumer" means an individual who bought his or her home or
11         fireplace for personal, family, or household purposes.

12         Excluded from the class are (1) the judge to whom this case
           is assigned and any member of the judge's immediate family;
13         and (2) anyone who suffered personal injury related to
           Defendants' fireplaces
14

15      IT IS SO ORDERED.

16  Dated: 02/16/10                    _____
                                       CLAUDIA WILKEN
17                                     United States District Judge

18

19

20

21

22

23

24

25

26  _____

27      [6]The Court modifies Plaintiffs' proposed definition to specify
    that the fireplaces at issue are "gas" fireplaces.

28                                     26

**United States District Court**
For the Northern District of California